69 N.Y.2d 329 (1987)
Alexander Sabetay, Appellant,
v.
Sterling Drug, Inc., Respondent.
Court of Appeals of the State of New York.
Argued February 11, 1987.
Decided March 26, 1987.
Wayne N. Outten for appellant.
Alan M. Koral and Loraine M. Cortese for respondent.
Chief Judge WACHTLER and Judges SIMONS and TITONE concur with Judge BELLACOSA; Judge HANCOCK, JR., concurs in result in a separate opinion; Judges KAYE and ALEXANDER taking no part.
*331 BELLACOSA, J.
Plaintiff asserts he was wrongfully discharged from employment because he refused to participate in certain improper, unethical and illegal activities, and because he "blew the whistle" on these alleged activities. He was employed by a division of the defendant corporation without a written contract, and alleges that his dismissal was in violation of two contractual obligations: the first arising from the "Corporate Employee Relations Policy" manual and the second arising from Sterling's Code of Corporate Conduct and Internal Control Guide (together referred to as the "Accounting Code").
The issue is whether plaintiff stated a cause of action by alleging that a statement in a corporate personnel policy manual created an enforceable contractual promise not to terminate him on any ground not mentioned in the manual, or by alleging that various corporate accounting policies constituted an employment agreement precluding plaintiff's termination *332 for refusing to participate in allegedly improper activities.
From June 1972 to December 1984 plaintiff, a director of financial projects, was employed by Sterling International Group, a division of Sterling Drug. He had been administering the dissolution of Sterling's Greek manufacturing facility. The liquidation was completed in June 1983. In February 1984, plaintiff was recalled to New York and was notified of his discharge in July, when no job within Sterling or any of its subsidiaries could be found for him.
Plaintiff alleges that he was discharged because he refused to participate in certain illegal activities (i.e., tax avoidance schemes and maintenance of slush funds) arising out of the liquidation of Sterling's Greek manufacturing facility, and because he disclosed these activities to his supervisor in compliance with what plaintiff believed to be corporate policy. His complaint alleges four contract and three tort causes of action, all based on wrongful discharge from employment.
Defendant Sterling moved, pursuant to CPLR 3211 (a) (7), to dismiss the complaint on the ground that none of the seven causes of action stated a cognizable claim. Supreme Court dismissed the tort actions but denied the motion as to the four contract causes of action. The Appellate Division affirmed the dismissal of the causes of action sounding in tort and also dismissed the four claims based on a breach of an implied contract of employment. Although the complaint was dismissed in its entirety, plaintiff, on appeal to this court, challenges only the dismissal of the four contract causes of action. We agree with the Appellate Division that plaintiff has failed to state a cognizable cause of action for breach of any implied contract rights.
As the basis for the first breach of contract claim, Sabetay contends that Sterling's personnel manual, which enumerates seven grounds for termination, establishes an implied promise that those are the only grounds for termination and that plaintiff's termination without cause amounted to a breach of that implied contractual agreement.
The three remaining contract claims (plaintiff's second, fourth and sixth causes of action) are based on Sterling's written policies, which plaintiff contends require an employee to refrain from certain illegal or unethical activities and impose a duty on the employee to report such activities to senior management officials. Sabetay argues that these policies, *333 coupled with a statement on the employment application that all Sterling employees are to comply with company rules and regulations, create an implied agreement not to dismiss an employee for activity in accordance with these very policies.
It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party (Martin v New York Life Ins. Co., 148 N.Y. 117, 121). The original purposes of the employment at-will doctrine were to afford employees the freedom to contract to suit their needs and to allow employers to exercise their best judgment with regard to employment matters.
In recent years, however, the unfettered power of employers to dismiss employees without cause has come under sharp scrutiny (see, Blades, Employment At Will vs. Individual Freedom on Limiting the Abusive Exercise of Employer Power, 67 Colum L Rev 1404 [1967]; and see generally, Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception, 96 Harv L Rev 1931 [1983]). To offset the harsh effect of the at-will doctrine and to afford workers a measure of job security, other courts have carved out exceptions to the common-law employment at-will doctrine (see, Peterman v International Bhd. of Teamsters, 174 Cal App 2d 184, 344 P2d 25; Trombetta v Detroit, Toledo & Ironton R. R. Co., 81 Mich App 489, 265 NW2d 489; Novosel v Nationwide Ins. Co., 721 F.2d 894 [3d Cir]; Sheets v Teddy's Frosted Foods, 179 Conn 471, 427 A2d 385 [recognizing claims of wrongful discharge based on dismissal for refusing to commit an unlawful act, or for performing a public obligation or for exercising a legal right]; see also, Toussaint v Blue Cross & Blue Shield, 408 Mich 579, 292 NW2d 880 [recognizing an implied-in-fact agreement limiting the employer's right to dismiss an at-will employee]; see also, Monge v Beebe Rubber Co., 114 NH 130, 316 A2d 549; Cleary v American Airlines, 111 Cal App 3d 443, 168 Cal Rptr 722 [recognizing an implied-in-law covenant of good faith and fair dealing in employment contracts which limits the right to discharge without just cause]).
In Weiner v McGraw-Hill, Inc. (57 N.Y.2d 458), this court dealt with its long-standing acceptance of the common-law rule. The plaintiff, who had begun his career with another publishing house, was invited to join the staff of McGraw-Hill. As part of its recruitment effort, McGraw-Hill's representative *334 assured the plaintiff that it was company policy not to terminate employees without just cause, and that employment at McGraw-Hill would bring the advantage of job security. Moreover, the application form Weiner signed specified that his employment would be subject to the provisions of the McGraw-Hill handbook on personnel policies. The handbook stated that "[t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee had been taken and failed. However, if the welfare of the company indicates that dismissal is necessary, then that decision is arrived at and is carried out forthrightly" (id., at 460-461). Weiner alleged that he had relied on these assurances when he left his former employer, forfeiting accrued fringe benefits and a proffered salary increase.
After eight years of employment, Weiner was advised that he was discharged for "lack of application" (id., at 461). He sued, alleging a breach of contract. McGraw-Hill countered that there was no contract of employment and that its promises of job security were not binding. While we found for Weiner, we adhered to our view that an employer has the right to terminate an at-will employee at any time for any reason or for no reason, except where that right has been limited by express agreement. The language in the McGraw-Hill handbook, coupled with the reference to the handbook in the employment application, amounted to an express agreement between those parties limiting the employer's otherwise unfettered right to terminate its employees. We also noted that to support his breach of contract claim, Weiner had alleged the following significant factors: "[F]irst, plaintiff was induced to leave Prentice-Hall with the assurance that McGraw-Hill would not discharge him without cause. Second, this assurance was incorporated into the employment application. Third, plaintiff rejected other offers of employment in reliance on the assurance. Fourth, appellant alleged that, on several occasions when he had recommended that certain of his subordinates be dismissed, he was instructed by his supervisors to proceed in strict compliance with the handbook and policy manuals because employees could be discharged only for just cause. He also claims that he was told that, if he did not proceed in accordance with the strict procedures set forth in the handbook, McGraw-Hill would be liable for legal action." (Id., at 465-466.)
Not surprisingly, because of the explicit and difficult pleading *335 burden, post-Weiner plaintiffs alleging wrongful discharge have not fared well (see, O'Connor v Eastman Kodak Co., 65 N.Y.2d 724; Murphy v American Home Prods. Corp., 58 N.Y.2d 293; Collins v Hoselton Datsun, 120 AD2d 952; Citera v Chemical Bank, 105 AD2d 636; Patrowich v Chemical Bank, 98 AD2d 318 [claim dismissed because the language relied on was not sufficient to establish an express agreement]; Rizzo v International Bhd. of Teamsters, 109 AD2d 639 [claim dismissed because employee failed to establish detrimental reliance on the assurance of job security]).
In Murphy v American Home Prods. Corp. (58 N.Y.2d 293, supra), we not only refused to recognize a common-law tort theory of liability based on abusive or wrongful discharge but, more important and relevant to the instant case, we refused to adopt the implied covenant of good-faith analysis recognized in some jurisdictions.
Murphy had alleged that he had been discharged for internally reporting to top management certain alleged accounting improprieties. He contended that his company's internal regulation required him to refrain from engaging in such illegal activities and also compelled the reporting of such activities. On Murphy's breach of contract claim he urged that, although his employment was of indefinite duration, there was an implied obligation in all employment contracts to deal fairly and in good faith, and that a termination in violation of that obligation exposes the employer to liability.
We rejected plaintiff's invitation to find an implied covenant of good faith in the employment contract. In so ruling, we distinguished an employment contract from other types of contract where the implied-in-law theory has been adopted. Noting that a covenant of good faith can be implied only where the implied term is consistent with other mutually agreed upon terms in the contract, we stated: "New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of the party to a contract may be implied and, if implied, will be enforced (e.g., Wood v Duff-Gordon, 222 N.Y. 88; Pernet v Peabody Eng. Corp., 20 AD2d 781). In such instances the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship * * * in which the law accords the employer an unfettered right to terminate employment at any time. In the *336 context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination * * * to imply such a limitation from the existence of an unrestricted right would be internally inconsistent." (Id., at 304-305.) Lastly, we concluded that Murphy had failed to establish an express limitation on the employer's right of discharge under the strict guidelines established in Weiner (id., at 305).
Dispositive in Murphy was plaintiff's failure to establish an express limitation on his employer's right of discharge (id., at 305; accord, O'Connor v Eastman Kodak Co., 65 N.Y.2d 724, supra). Although plaintiff had made general references to an employer's manual, he cited no provisions pertinent to the right to termination  certainly none rising to the explicit restriction that, in the circumstances of Weiner, was found to be actionable (Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 305, supra).
As in Murphy, plaintiff Sabetay has failed to demonstrate a limitation by express agreement on his employer's unfettered right to terminate at will, and all four of the breach of contract causes of action must be dismissed. To the contrary, the language in Sterling's personnel handbook, "Accounting Code" and employment application refutes any possible claim of an express limitation. The personnel manual was circulated to an extremely limited number of Sterling managerial employees solely for the purpose of determining posttermination benefits, and plaintiff was not one of those few employees authorized to receive a copy. Similarly, the "Accounting Code" and statement on the employment application requiring Sterling employees to abide by company rules do not, taken together, rise to an express agreement that Sterling would not dismiss an employee for following its policies of full disclosure of business improprieties. Rather, these two documents merely suggest standards set by Sterling for its employees' performance of their duties that, without more, cannot be actionable.
We have noted that significant alteration of employment relationships, such as the plaintiff urges, is best left to the Legislature (see, Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 301-302, supra), because stability and predictability in contractual affairs is a highly desirable jurisprudential value.
*337 Indeed, the Legislature has responded to this appropriate sensitivity by enacting numerous protections against abusive discharge and by prohibiting employers from discharging at-will employees for reasons contrary to public policy (see, Judiciary Law § 519; Executive Law § 296 [1] [e]; Labor Law §§ 215, 740; Civil Service Law § 75-b).
In sum, to sustain the plaintiff's complaint in this case, the court would have to relax the Weiner requirements, to expand the Weiner holding into the implied contract category, and to overrule the recently resolved Murphy rejection of implied covenants in employment relationships. Based on stare decisis principles and sound contractual and policy reasons, we do not believe we should do any of those things, no less all of them.
Accordingly, the order of the Appellate Division should be affirmed.
HANCOCK, JR., J. (concurring).
Like the concurring Justice at the Appellate Division,[*] I cannot disagree with the majority's conclusion that dismissal of the complaint is compelled by our decisions in Murphy v American Home Prods. Corp. (58 N.Y.2d 293) and Weiner v McGraw-Hill, Inc. (57 N.Y.2d 458). Because the majority bases its decision on stare decisis and shows no inclination to relax the strict Murphy-Weiner employment at-will rule, I am constrained to concur in its result.
I add only that the effect of applying the Murphy-Weiner rule to require dismissal of plaintiff's second, fourth, and sixth causes of action seems particularly unfortunate. The thrust of these causes of action is that plaintiff was fired for doing precisely what he was compelled to do by defendant's written "Accounting Code". This code states, among other things, "[i]t is corporate policy to prohibit illegal or improper payments from company funds or assets * * * It is the responsibility of every employee promptly to report to General Counsel any knowledge of infractions of this policy. Any employee who fails to follow these policies will incur a penalty. Such penalty will range from lack of promotion (censure), to demotion or dismissal". Plaintiff alleges he was fired for reporting improper activities pursuant to this policy. Under the Murphy-Weiner rule as applied, defendant is precluded from claiming that the law, under the circumstances he alleges, imposes an obligation on the employer not to fire him for doing what he *338 may be fired for failing to do. Relaxing the Murphy-Weiner rule to recognize an implied duty under these circumstances would not require an abandonment of the Murphy rule that a good-faith obligation will not be read into all employment at-will contracts. Such limited exception  "that in every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part" (Grad v Roberts, 14 N.Y.2d 70, 75)  is consistent with basic rules of contract law and has ample support in precedent and other recognized authority (see, e.g., Murphy v American Home Prods. Corp., supra, at 310-311 [Meyer, J., dissenting]; Grad v Roberts, supra, at 75; Wood v Duff-Gordon, 222 N.Y. 88, 91; Wakefield v Northern Telecom, 769 F.2d 109, 112; 22 NY Jur 2d, Contracts, § 201 [1982]; Restatement [Second] of Contracts § 205 [1979]).
Order affirmed, with costs.
NOTES
[*] Justice Ellerin concurred in the result on constraint of Murphy v American Home Prods. Corp. (58 N.Y.2d 293).