**Jacques SIVEL, Plaintiff,**

v.

**READERS DIGEST, INC., Mel Williams and Wes Oliver, Defendants.**

**No. 85 CV 7205 (RJD).**

United States District Court, S.D. New York.

Jan. 13, 1988.

McQuade & McQuade, New York City, for plaintiff.

Stein, Zauderer, Ellenhorn & Sharp, New York City, for defendants.

## MEMORANDUM OF DECISION AND ORDER

DARONCO, District Judge.

This diversity action is before the Court on defendants' Motion for summary judgment. Accordingly, the facts are related as they appear in plaintiff's Affidavit and accompanying Exhibits.

Stripped of its irrelevant legal conclusions, plaintiff's Affidavit discloses that he met defendants Williams and Oliver, two of Reader's Digest's (Digest) executives, in 1981, when he was employed at Avon, Inc. in the field of international print production and technology. Williams attempted to persuade plaintiff to accept employment in France. After plaintiff met in France with a Digest executive, Bertrand Bisson, Williams offered plaintiff an arrangement in which he would work in the United States for one year; thereafter, on Bisson's retirement, plaintiff would relocate to France. If the French position were not to become vacant, plaintiff would be let go. This arrangement was unacceptable to plaintiff, who reiterated his desire to remain with his family in the United States.

In August 1981, Williams and Oliver offered plaintiff the position of international production manager. Allegedly, they neglected to mention that this position was non-existent at the Digest's Pleasantville, New York, USA headquarters. Nevertheless, upon plaintiff's insistence of written assurances, Williams produced defendant's Employee Handbook and assured plaintiff,

"1) that evaluation reports are maintained for all employees;

2) that I could only be discharged for a substantial mistake which would cost the Digest a sizeable loss or for wrongdoing;

3) that it was the Digest's policy not to fire someone except for serious cause.

He also assured me that he and Wes Oliver would produce a letter confirming that:

a) I was not being hired for the U.S. temporarily for one year and then moved to France or let go.

b) I was being hired for a permanent position here in the U.S.

c) the Digest would undertake with U.S. Immigration to obtain permanent resident status for myself and my family here in the U.S.

d) that I would not be fired except for serious cause."

Sivel Affidavit ¶ 20. Plaintiff further states that it was represented that defendant's employment practices included annual reviews for promotion and termination and termination only for cause preceded by a probationary warning and that he had been hired for employment in the United States. Additionally,

> "Although the Handbook did not state that these evaluations would be used to determine if 'just cause' existed for termination, that is what Williams and Oliver told me before I was hired."

Sivel Affidavit ¶ 29.

Williams also sent three letters to the Immigration and Naturalization Service urging extension and renewal of plaintiff's status as a temporary worker. The first, dated September 1, 1981, indicates defendant's intent to employ plaintiff for one year at a salary of $50,000, explains the Digest's need for plaintiff's services as international production manager, a position conforming to the title, "Supervisor, Publications Production," in the dictionary of occupational titles, and describes some of the position's duties and responsibilities. A second letter dated October 20, 1981 appears to be a duplicate of the first. A third letter, dated October 15, 1982, states that defendant will need plaintiff's services until November 4, 1983 and otherwise refers to matters concerning plaintiff's family.

Most significantly, Williams and Oliver "showed me the Handbook, which *I felt* was sufficient proof limiting their right to terminate me." Sivel Affidavit ¶ 24. After he commenced work, plaintiff received a copy of the Handbook. Plaintiff claims that he never received an evaluation thereafter. About a year later, Bisson retired, but plaintiff was not selected as his replacement. According to plaintiff, as a result, he became expendable and was terminated in November 1982 on the ground of deficient communications skills.

## I.

Defendants first contend that plaintiff's claim for breach of an oral employment contract fails because plaintiff was an "at-will" employee.

> "It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party."

*Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987). In *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), the Court of Appeals,

> "... adhered to our view that an employer has the right to terminate an at-will employee at any time for any reason or for no reason, except where that right has been limited by express agreement."

*Sabetay*, 69 N.Y.2d at 334, 514 N.Y.S.2d 209, 506 N.E.2d 919. The Court of Appeals for this Circuit has advised, pursuant to *Weiner*,

> "... that the merits of a claim alleging breach of an employment contract are not to be determined by application of a formula or checklist; instead, the totality of facts giving rise to the claim must be considered."

*Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 853 (2d Cir.1985). As the Court explained in *Sabetay*, however, the express agreement in *Weiner* consisted of the language of the employee Handbook and reference thereto in the employment application, 69 N.Y.2d at 334, 514 N.Y.S.2d 209, 506 N.E.2d 919. Beyond this express agreement, the circumstances of *Weiner's* having left his employer and rejected other offers in reliance on the assurance that he would not be discharged without cause, which assurance appeared on the employment application, and having been advised to adhere to the Handbook and policy manuals' procedures in terminating subordinates to avoid exposing *McGraw–Hill* to liability emphasized that *McGraw–Hill* had intended to waive, in part, its right to fire at will.

■ In the instant case, plaintiff's asserted evidence of the express agreement consists solely of the verbal representations allegedly made by Williams. The writings which plaintiff has submitted to

substantiate the existence of an express agreement do not establish defendant's waiver of its right to fire at-will. The letters submitted to the Immigration authorities (collectively, Exh. C to Sivel Affidavit), contain no express agreement and do not refer to any agreement. At best, the third letter indicated defendant's intention to retain plaintiff until November 1983; however, nothing in any of the letters suggests that defendant waived, ceded or somehow diminished its right to fire at will. While the Employee Handbook, Exh. A to Farquhar Affidavit, discusses evaluations entitled "Progress Reviews," which are based on listed factors and are reviewed by a salary committee, along with the supervisor's recommendations on salary increases, nothing in the book states that these annual reviews are or will be considered in making a decision to terminate. Plaintiff's feeling about the rights granted by the Handbook was in error. Other memoranda, collectively Exh. D to Sivel Affidavit, apparently generated by Williams, refer vaguely to plaintiff and a number of seemingly unrelated matters. These notes confirm defendants' interest in Sivel, a point more obviously inferable from their offer of employment, but nothing qualifies or limits or otherwise identifies their impending relationship as other than at-will. The same may be said for a document entitled, *"Due Process and Problem Solving,"* Exh. E to Sivel Affidavit, which describes procedures to be followed to address problems in attendance, performance, and disruptive actions. Plaintiff does not claim to have relied upon this document. Even if he had done so, any limitation on the power to fire at will must be *implied* from the procedures outlined. No document submitted by plaintiff states that, "[Reader's Digest] will resort to dismissal for just and sufficient cause only ...," *Sabetay, supra,* 69 N.Y.S.2d at 334, 514 N.Y.S.2d 209, 506 N.E.2d 919, or any equivalent, which is the language that rebutted the at-will presumption in *Weiner. See Brumbach v. Rensselaer Polytechnic Institute,* 126 A.D.2d 841, 510 N.Y.S.2d 762, 763 (3rd Dept.1987); *Collins v. Hoselton Datsun, Inc.,* 120 A.D.2d 952, 503 N.Y.S.2d 203, 204 (4th Dept.1986) (memorandum); *cf. Sabetay, supra,* 69 N.Y.2d at 334–35, 514 N.Y.S.2d 209, 506 N.E.2d 919 ("not unsurprisingly, because of the *explicit and difficult pleading burden,* post-*Weiner* plaintiffs alleging wrongful discharge have not fared well." [emphasis added] [citations omitted]).

Absent the writing, the basis for plaintiff's claim of an express agreement derives from Williams' and Oliver's alleged assurances that plaintiff could be terminated only for a "serious mistake" and that the evaluation described in the company Handbook would be used to determine the existence of "just cause." Plaintiff adds that he was induced by defendants to reject a substantial offer from his former employer, Avon, Inc. The document offered to evidence the existence of the offer, Exh. A to Sivel Affidavit, is a letter to plaintiff from Avon. The writer expresses regret that plaintiff does

"not feel that this level of income is sufficient to provide you and your family with an acceptable standard of living."

It further explains the circumstances of plaintiff's return to France and is dated May 27, 1981. The inescapable inference is that plaintiff had rejected the Avon offer prior to the offer he accepted from Reader's Digest, which came in or after August 1981.

■ With respect to the oral assurances or representations, defendants contend that their quality renders them inadequate to constitute an express limitation on the right to discharge an employee at will, citing *Grant v. DCA Food Industries, Inc.,* 124 A.D.2d 909, 508 N.Y.S.2d 327 (3rd Dept.1986) (memorandum); *Kotick v. Desai,* 123 A.D.2d 744, 507 N.Y.S.2d 217 (2d Dept.1986) (memorandum), and *Toshiba America, Inc. v. Simmons,* 104 A.D.2d 649, 480 N.Y.S.2d 28 (2d Dept.1984) (memorandum). These cases are not dispositive of the issue. *Kotick* and *Toshiba* rest upon the inadequacy of the substance of the oral representations and not upon their oral quality. *Grant* rests upon the statute of frauds, a defense not at issue on this Motion. Relevant to this issue, however,

*Ohanian v. Avis Rent A Car System, Inc.,* 779 F.2d 101 (2d Cir.1985), sustained a jury finding in favor of a plaintiff who had relied upon his future employer's statement that,

> "As far as I was concerned, his future was secure in the company, unless—and I always had to qualify—unless he screwed up badly."

*Id.* at 104, 109. This testimony came at trial from the future employer. Williams and Oliver have not submitted Affidavits; consequently, they have not confirmed plaintiff's version of the events leading up to his employment. *Ohanian,* however, does not raise a plaintiff's burden of proof to nothing short of an affirmation of the express limitation by the declarant. In other words, plaintiff's own testimony, if believed, may furnish evidence of the express limitation required to rebut the at-will presumption. Accordingly, defendants' Motion as to the breach of contract claim is denied.

## II.

■ Defendants characterize the second through fifth claims as alleging misrepresentations about their intentions to perform the contract alleged in the first claim. Plaintiff responds that these misrepresentations relate to "existing material facts and not only to terms relating to" his employment.

From plaintiff's perspective, the defendants' scheme appears to have been relatively simple. Furnishing the assurances plaintiff requested, defendants hired him for a nonexistent position in the United States with the intention of eventually transferring him to that position in France. In other words, defendants allegedly told plaintiff falsehoods to lure him into accepting a position he would never have accepted had he known of their plans for his future. Thus, plaintiff distinguishes fraud intended to induce a party to enter into a contract from false promises of future performance, citing *Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 194 (2d Dept. 1980). Under *Brown,* plaintiff must demonstrate the lack of intent to perform at the time the promise is made, and he may

not rest upon an adverse inference arising from the nonperformance. In this case, the allegedly fraudulent inducement is not separate from the contract it induced as occurred in *Brown,* 432 N.Y.S.2d at 192. The inducements of which plaintiff complains were inextricably considered by him to be essential terms of the agreement. He insisted on assurances of employment and job security in the United States in exchange for his services and claims that he received them. As such, plaintiff may only enforce the failure to perform the alleged contractual promises of future acts by an action on the contract. *See C.B. Western Financial Corp. v. Computer Consoles, Inc.,* 122 A.D.2d 10, 504 N.Y.S.2d 179, 182 (2d Dept.1986) (memorandum); *Spellman v. Columbia Manicure Mfg. Co., Inc.,* 111 A.D.2d 320, 489 N.Y.S.2d 304 (2d Dept.1985) (memorandum); *Grant v. DCA Food Industries, Inc.,* 124 A.D.2d 909, 508 N.Y.S.2d 327, 328 (3rd Dept.1986); *Wegman v. Dairylea Coop, Inc.,* 50 A.D.2d 108, 376 N.Y.S.2d 728, 734–35 (4th Dept. 1975) *mot. lv. to appeal dismissed,* 38 N.Y. 2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976). Accordingly, defendants' Motion for summary judgment on the second, third, fourth and fifth claims is granted.

SO ORDERED.