**Roger WINTERS and David Burt, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. CIV–86–38E.

United States District Court, W.D. New York.

June 5, 1989.

Joseph R. Klawon, Williamsville, N.Y., for plaintiffs.

Arnold Weiss, Buffalo, N.Y., for defendant.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The instant action for wrongful layoff was removed to this Court from New York's court system pursuant to a petition filed January 15, 1986. *See* 28 U.S.C. § 1441. This Court obtained jurisdiction based upon the diversity of citizenship of the parties.[1] *See* 28 U.S.C. § 1332. Presently the defendant has moved for summary judgment, asserting that there is no

---

1. The plaintiffs are citizens of New York, while the defendant is a Delaware corporation with its principal place of business in Michigan. Each plaintiff seeks damages in the amount of $250,000 exclusive of interest and costs.

material issue of fact outstanding and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. rule 56.

Both plaintiffs began working for the defendant in 1970 as hourly employees. They had been union members and were protected by a collective bargaining agreement under which any layoffs or reduction in the defendant's work force would be based upon seniority—*viz.*, length of service with the defendant. Affidavit of Roger Winters (sworn to October 11, 1988), ¶ 2; Affidavit of David Burt (sworn to October 7, 1988)[2], ¶ 2. In 1977 and 1978, respectively, the plaintiffs were promoted to the supervisory level and thereupon became non-union, salaried employees. Thereafter, the plaintiffs worked as "Supervisors of Production" and each was appraised at a level of "good/competent" according to the defendant's internal system for evaluating employee performance. Affidavit of Richard N. Ketelsen (sworn to July 26, 1988), Exhibit E thereto (deposition of Richard N. Ketelsen, dated November 16, 1987, at pp. 12, 24–25). The plaintiffs continued to work as Supervisors of Production until 1981 when they were laid off. The plaintiffs are currently working for the defendant in the same capacity as immediately prior to the layoffs. It is not precisely clear when they resumed working for the defendant, but the defendant did not recall any laid-off employees until 1984. Ketelsen deposition, *supra*, at p. 32.

The plaintiffs contend that they were wrongfully laid off. In doing so, they do not purport to include themselves among the defendant's union workers, whose employment conditions are governed by a collective bargaining agreement. Instead, they assert that they were laid off in violation of the defendant's established policy pertaining to such. They point to the defendant's publication entitled "Working With General Motors" ("the Handbook"), in which under the caption "Reduction in Force Procedures" the following is said to be set forth:

"If layoffs become unavoidable, reductions in the work force are made separately by each department and job classification. However, several departments having common job classifications may be combined for this purpose, provided the work is interchangeable. Reductions will be made generally in the order of least total Corporate length of service for employes [sic] with five or more years of length of service and with a performance rating of Good Competent or higher. This is done in recognition of the commitment by these employes to a career with GM. Exceptions may be made, for instance, in the case of employes who have demonstrated outstanding ability and potential or who possess critical skills or abilities. In applying the 'least service' concept to an employe whose service includes time spent as an hourly-rate employe, total Corporate length of service is recognized after the employe has completed 12 months of continuous salaried service.

"In recognition of the need to retain the very best employes and the desire to provide longer service employes with improved job security, short service employes (those with less than five years' length of service) will be selected for layoff first and the sequence of layoff will be on the basis of their performance appraisal ratings.

"Further, before any employes are actually laid off, they will be considered for other jobs they can perform capably with minimal training in the same or another department at the same level, or lower. Employes with five or more years of service may displace others with less service. Employes with less than five years of service may displace shorter service employes on the basis of performance or, if performance is equal, on the basis of service. Employes with previous hourly-rate service will be given an opportunity to return to hourly-rate employment, if possible.

**2.** The Burt affidavit is part of papers denoted as "Plaintiffs' Summary Judgment Statement," which were received by the Clerk of this Court October 11, 1988 but not filed at such time. These papers have since been filed with the Clerk at the direction of this Court.

"Finally, people who are to be laid off will be given advance notice. They will be told why the reduction is necessary, how they were selected, their status while laid off, the impact on various benefit plans and the help provided by the Layoff Benefit Plan and the Income Protection Plan."

Burt affidavit, *supra* (copy of portion of the Handbook, at sheets denoted "26" and "27").[3]

The plaintiffs claim that provisions of this nature constituted a binding condition of their employment and that they relied upon such in accepting promotions from the union work force to salaried status. Winters affidavit, *supra*, ¶ 4. The defendant purportedly breached its stated policy by laying off the plaintiffs while retaining other salaried employees with the same appraisal rating but less seniority.[4] *Id.*, ¶ 7.

The defendant's position is that the only operative documents concerning the plaintiffs' conditions of employment were their respective written employment agreements, both of which provided for employment on a month-to-month basis. Ketelsen

affidavit, *supra*, ¶¶ 6–10. These agreements are said to specifically state:

"The Employe [sic] acknowledges that his employment under this Agreement is from month-to-month only on a calendar month basis."

"The Employer and Employe acknowledge that there are no other arrangements, agreements or understandings, verbal or in writing, regarding same, and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialled by both the Employe and the Employer." *Id.*, ¶¶ 7–8.

The defendant argues that, inasmuch as the parties never amended the respective employment agreements in the manner specified, the sort of provisions noted above from the Handbook were never binding terms and conditions of employment. Instead, such provisions are said to have constituted merely "voluntary guidelines unilaterally adopted by management."[5] *Id.*, ¶ 13.

**3.** Strictly speaking, such portion of "the Handbook" is not before this Court. Mr. Burt's affidavit does not specifically mention it or incorporate it by reference. In his paragraph 4 he states that he "was assured that any necessary reductions in force would be based upon seniority, and that salaried employees would not be laid off in an indiscriminate or random fashion. *This was also reflected in a General Motors handbook which set forth the company's policies and procedures.*" (Emphasis supplied.) Following the four-page affidavit and under the same cover are nine sheets, none of which is identified in any usual fashion—*e.g.,* Exhibit A. The first of these bears a handwritten "Winters Exhibit 3 12/4/86" and can be taken to be what Mr. Burt has referred to in his paragraph 7 wherein he states: "Attached is a list of employees prepared by Roger Winters and me." (Oddly—or perhaps not, in view of the general form of the plaintiffs' papers—, while Mr. Winters in paragraph 7 of his affidavit says that "David Burt and I prepared the attached list * * *," nothing is attached thereto.) The next sheet bears "Winters Exhibit 2 12/4/86" and "2–86 133 R A Winters" and the printed words "Working With General Motors." Thereafter follow the sheets bearing "26" and "27" from which the material in the foregoing text is quoted. Next is a sheet bearing defendant's logo, "WWGM 160M–NOV85" and "LITHO IN U.S.A." Follow-

ing that is a sheet with a cascade of visages, "1–78," "Winters Exhibit 1 12/4/86," "Working with General Motors," its logo and something scratched out. There then are two sheets bearing, respectively, "26" and "27" with a line drawing presumably of happy employees, the major title "LAYOFF AND RECALL" and subtitles, one of which is "Reductions in the Work Force." The final sheet boasts of some sketchy figure at its left center and at its bottom "WWGM 170M 9–77" and "LITHO IN U.S.A." The pertinent statement is roughly that which is set forth in the text except that the second paragraph has been omitted (or added, depending on which is the earlier version).

The defendant has not disputed the existence of its Handbook or that it contains the above-quoted language, however. Hence for purposes of the defendant's summary judgment motion only, this Court construes the matter not to be materially at issue.

**4.** The plaintiffs similarly claim that their recall to work violated the defendant's policy as to such, which was also allegedly based upon seniority. Winters affidavit, *supra*, ¶ 8 (actually numbered "5" but following paragraph 7).

**5.** In further support of its contention that the Handbook's provisions are not in anyway bind-

New York law [6] presumes that, "absent an agreement establishing a fixed duration," an employment is "at will" and terminable at any time by either party. *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920–921 (1987); *see Martin v. New York Life Insurance*, 148 N.Y. 117, 42 N.E. 416 (1895) (adopting employment at will doctrine). This doctrine maximizes the freedom of employers and employees to contract for the purchase and sale of labor. In recent years, however, courts have created exceptions to the doctrine in order to afford some measure of job security to workers who could otherwise be dismissed with or without notice—for good cause, bad cause, or no cause at all. *Sabetay v. Sterling Drug, Inc., supra*, 69 N.Y.2d at 333, 514 N.Y.S.2d at 211, 506 N.E.2d at 920–21. Most pertinently here, in a series of cases, New York's Court of Appeals has established that an employer's right to terminate an employee may be qualified by an "express limitation" of that right. *Id.*, 69 N.Y.2d at 333–337, 514 N.Y.S.2d at 211–213, 506 N.E.2d at 920–923; *see Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982).

In most instances, the common law employment at will doctrine operates as a contractual default rule, supplying an indefinite durational term as a matter of law where the parties' employment agreement has not specifically addressed the matter. The parties may, nonetheless, contractually ensure application of the presumptive legal rule by expressly embracing it. *See, Toussaint v. Blue Cross and Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980). Such appears to be the situation here. The plaintiffs' employment agreements were for a "month-to-month" duration, seemingly meaning that they were terminable with or without cause, provided such termination was had upon thirty days' notice. *Cf.*, Section 228 of New York's Real Property Law (termination of tenancies at will by thirty days' notice). More than simply expressly adopting the employment at will doctrine, however, these agreements contained exclusivity clauses. The parties agreed that there were no superceding agreements governing their employment relationship. Thus, the threshold legal question concerns the nature of New York's "express limitation" exception to the employment at will doctrine, upon which exception the plaintiffs necessarily rely. If the exception operates only contractually to enforce superceding agreements curtailing the ordinary discretion to terminate an employment relationship, such "express limitation" exception can have no effect here inasmuch as the parties agreed that there were no superceding agreements. On the other hand, if the exception operates equitably to estop an employer from abrogating its unilateral expression of limits on its discretion to terminate employees, notwithstanding the employer's contractual rights, the agreement about no superceding agreements is without consequence.[7]

---

ing, the defendant, in its memorandum of law, cites a disclaimer said to exist within the Handbook itself. Defendant's Memorandum in Support of Motion for Summary Judgment, at p. 11. Such provision, if it exists, is not contained in any of the "pleadings, depositions, answers to interrogatories, and admissions on file, [or] the affidavits" and as such should not be considered in deciding a summary judgment motion. *See* Fed.R.Civ.P. rule 56(c). A memorandum of law is not competent evidence, and assertions of fact therein cannot stand on their own. On a sauce for the goose approach, it arguably has as much evidentiary standing as does the Handbook's portions presented by the plaintiffs, *see* fn. 3 hereinabove; but in view of the manner in which the instant motion will be disposed of, it is unnecessary to take cognizance of the disclaimer portion of the Handbook.

**6.** The parties agree that New York law is controlling in this case.

**7.** At first glance this distinction may appear unduly analytical, but it is actually of the utmost importance, for this case concerns not merely a judge-made common law rule in tandem with a judge-made exception thereto, but rather a written contract, duly entered into, under which the rule is adopted and agreed to but not its exception. Thus, the question here is not simply whether the exception can supercede the rule in a given case but whether and under what circumstances it can also supercede an express contract effectively embodying the rule.

In *Weiner v. McGraw–Hill, Inc., supra,* the plaintiff-employee sued for wrongful discharge, asserting that he had been terminated in violation of the provisions of that defendant's handbook on its personnel policies. New York's Court of Appeals held that the "complaint spelled out a cause of action in contract" and so declined to address alternative theories employed in other jurisdictions under which the strict employment at will doctrine might be overcome. *Id.,* 57 N.Y.2d at 462, 457 N.Y.S.2d at 195, 443 N.E.2d at 443. The Court found four factors in the record which in combination provided sufficient evidence of a contract and its breach to sustain a cause of action: (1) the plaintiff had been induced to leave his former employer by assurances in the handbook that the defendant's employees would not be discharged without cause; (2) this assurance was incorporated in the employment application; (3) the plaintiff relied upon this assurance in rejecting other offers of employment; and (4) the plaintiff had, while in the defendant's employ, been told that he could only fire his subordinates by strictly complying with the handbook's procedures. *Id.,* 57 N.Y.2d at 466, 457 N.Y.S.2d at 197, 443 N.E.2d at 445. The plaintiff's rendering of some of the requested service in return for the employer's promise of a definite or determinable period of employment supplied the necessary consideration to uphold the agreement, even though the plaintiff had made no return promise and had retained the legal privilege of terminating his employment at will. *Ibid.* (*citing* 1A Corbin, Contracts, § 152).

Subsequently, in *Murphy v. American Home Products Corp., supra,* New York's Court of Appeals specifically declined to recognize the emerging tort of wrongful discharge of an at will employee. *Id.,* 58 N.Y.2d at 302, 461 N.Y.S.2d at 235–236, 448 N.E.2d at 89–90. The Court also rejected an invitation to imply by law a covenant of good faith discharge in at will employment agreements. *Id.,* 58 N.Y.2d at 304, 461 N.Y.S.2d at 237, 448 N.E.2d 91.

Most recently, in *Sabetay v. Sterling Drug, Inc., supra,* the Court of Appeals applied its prior decisions in *Weiner v.*

*McGraw–Hill, Inc.* and in *Murphy v. American Home Products Corp.* and in light thereof held that the plaintiff's wrongful discharge cause of action was deficient in failing "to demonstrate a limitation by *express agreement* on his employer's unfettered right to terminate at will." *Id.,* 69 N.Y.2d at 336, 514 N.Y.S.2d at 213, 506 N.E.2d at 922–923 (emphasis added).

■ Thus it appears without a doubt that New York's express limitation exception to the employment at will doctrine singularly arises as a matter of contract law. Indeed, the United States Court of Appeals for the Second Circuit has so construed the New York decisions. *See Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 852 (2d Cir.1985). The express limitation, to have effect, must be in the form of a contractual agreement supported by adequate consideration.

■ In determining the existence of such an express limitation, the totality of the circumstances must be considered, including the parties' writings, their subjective intent, their course of conduct, and their antecedent negotiations. *Weiner v. McGraw–Hill, Inc., supra,* 57 N.Y.2d at 466, 457 N.Y.S.2d at 198, 443 N.E.2d at 446; *see also Gorrill v. Icelandair/Flugleidir, supra,* at 853. Here the plaintiffs' respective agreements provided that there could be no supplemental or superceding agreements except as specified—*viz.,* through cancellation and replacement by another written agreement or a modifying amendment endorsed on the first agreement by both parties. This Court believes that New York's Court of Appeals would find such to be in itself a dispositive circumstance. The written employment contracts were integrated agreements, specifically embodying the entire understandings of the parties. It would be incongruous to infer an additional agreement within the Handbook in derogation of the express written terms of the employment contracts. Hence, the Handbook could not have constituted an express limitation on the defendant's right to discharge the plaintiffs at will.

Accordingly and inasmuch as there is no material fact genuinely in issue and because as a matter of New York law the defendant was entitled to discharge and recall the plaintiffs with provision of a month's notice and without any other contractual limitation, the defendant's motion for summary judgment is hereby ORDERED granted.

