OPINION OF THE COURT
James P. Dawson, J.
*893 The plaintiff commenced this action by filing a summons and complaint May 28, 1997 seeking to recover damages based on allegations that she was terminated from her position with the defendant under circumstances which give rise to a claim of gender discrimination. As originally pleaded, the complaint’s first cause of action asserted violations of both title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.) and Executive Law based on gender discrimination, but the plaintiff has since determined not to pursue any Federal claim.[1] The second cause of action asserts wrongful termination, and the third seeks damages based on the physical and emotional harm caused to plaintiff due to the alleged discrimination. The defendant has joined issue by service of its answer with affirmative defenses, and discovery has been had, including the depositions of, inter alla, plaintiff and Ms. Pam Prim, President of Prim Hall Enterprises, Inc. (Prim Hall).
The motion pending before the court was brought by defendant and seeks an order dismissing the complaint on summary judgment grounds. (Since the motion is not founded on the grounds of CPLR 3211 [a], discussion of the defendant’s defenses is unnecessary in this opinion.) The plaintiff opposed the motion and the matter was heard at Special Term. After considering the papers submitted and the arguments of counsel, the court reserved its decision.
RELEVANT FACTS
The defendant is a corporation which maintains a manufacturing facility located in the Town of Plattsburgh which is organized such that, as is relevant to this motion, there is one assembly department, colloquially referred to as the “Floor,” which contains an electrical department and a mechanical department. The plaintiff began working for the defendant in May of 1994 in a full-time temporary position in the electrical department. The parties had no written employment agreement. Ms. Hughes worked in that position for approximately three months and then transferred to a position in inventory control. She was laid off in November of 1994 and does not challenge that termination in this action. Rather, she challenges a termination in October of 1995 which was made, de *894 fendant argues, as part of a reduction-in-force, but which plaintiff claims was based on her being a female in a workplace dominated by men.
Ms. Hughes returned to employment with the defendant in December of 1994 when she went to Chicago, Illinois, to work on a project on behalf of Prim Hall. Once that project was completed in or about January or February of 1995, Ms. Hughes was rehired to work at the Plattsburgh facility where she was placed in an inventory control position. She worked in that position until approximately March of 1995 when she was placed in the electrical department. She was terminated from that position in October of 1995.
ARGUMENTS
As an employee-at-will, defendant states that the plaintiffs termination could be for any reason or no reason. As to the plaintiffs claim that the discharge was based on a discriminatory reason, however, the defendant argues that the plaintiffs termination in 1995 was the result of a reduction-in-force: a legitimate, nondiscriminatory reason. Indeed, Ms. Prim states in support of the motion that both male and female workers were terminated as part of the reduction-in-force and that the plaintiff was not the only employee discharged in the electrical assembly department. She states that the two male workers in the electrical department, Messrs. Bova and LaBombard, who were kept instead of plaintiff, were retained because they could perform more than one task and were used both in the mechanical and electrical assembly lines. Ms. Prim contends that Ms. Hughes did not have more company service than or even equal qualifications as Mr. Bova since he was hired a year before the plaintiff and had graduated from a vocational school after completion of a two-year program in electrical trades while the plaintiff had no vocational training in machine or electrical trades. As to Mr. LaBombard, Ms. Prim states that while the plaintiff had more company time than he did, she was not equally qualified to work in both the electrical and machine departments. Moreover, Ms. Prim adds, LaBombard had graduated from a two-year vocational school unlike plaintiff and points out that plaintiff had no electrical trade. The employment applications of Ms. Hughes and Messrs. Bova and LaBombard accompany her affidavit.
The plaintiff has not presented her own affidavit in response to the motion but has instead supplied affidavits of former workers at Prim Hall attempting to counter the proffered rea *895 son by defendant for her termination — a reduction-in-force in which better qualified men were retained.
An affidavit of Deane Tremblay, the former assembly manager at the time plaintiff worked at Prim Hall, is provided. Mr. Tremblay worked as a manager in finished parts storage from December of 1993 to January of 1994 and then was assembly manager from February of 1994 to February of 1996. He states that Ms. Hughes was “an excellent worker with very good skills.” Mr. Tremblay also states that Ms. Prim, in his presence, was told by the production manager of the Chicago project how the plaintiff interacted with the workers there and was told that she was doing very well. When the plaintiff returned from that project, Mr. Tremblay states that he asked to have her returned to the electrical department but she was not placed there until April of 1995, only to be let go that autumn due to a decline in business. Mr. Tremblay says that in anticipation of the employment discharges due to the work decline, he recommended that LaBombard be laid off since he was least qualified, having only a high school education with some BOCES courses and being hired directly from high school with only three months’ time with Prim Hall at the time of the downsizing. (Only one person from the electrical department was to be laid off, he says, whereas in the mechanical department there were two persons, that owing to the electrical department being smaller.) Plaintiff, he states, had electrical wiring and soldering training acquired through four years of work with a previous employer and had been with Prim Hall for almost a year minus brief periods of absence. Mr. Tremblay says that Hughes could perform more sophisticated wiring than either LaBombard or Bova who needed more simplified instructions. His recommendation that Mr. LaBombard be let go was not, however, acted upon. Mr. Tremblay claims that no other female other than Ms. Hughes was hired in electrical assembly during the 10-year history of the company. He also says that it was an unwritten company policy to rehire former workers when the need for new employees arose rather than recruit new hires, but this policy was not followed with respect to plaintiff. Mr. Tremblay comments, too, on Ms. Prim’s temperament and language used on the job which, in his opinion, made it difficult to work with her.
The plaintiff also submits the affidavit of another erstwhile worker, Karen Trombley, who worked at Prim Hall from May of 1993 through November of 1994 in various positions, performing clerical work and some drawing work in the *896 engineering department. Ms. Trombley states that she received an Associates’ degree in industrial engineering prior to commencing employment at Prim Hall and further states that during that employment she took additional courses in industrial engineering. She states that in the fall of 1994, she applied for a position as a machine operator and also for a computer numerical control position, both of which positions were located near the Floor. Ms. Trombley claims, however, that at that time she was told by Pam Prim that the positions for which she applied were “not a woman’s place to be.”
Judith Langley, former Human Resources Administrator with defendant, submits an affidavit wherein she relates that she worked at the Prim Hall facility from October of 1994 to July of 1997. She states that while she worked there, Ms. Prim told her that she did not like women working on the Floor with men because she did not want to risk lower productivity and wanted to avoid opportunities for misconduct or sexual harassment. During one of her conversations with Pam Prim at an unspecified time, Ms. Langley states that Ms. Prim told her that it would “really rock the boat down there in assembly if another woman was hired.” She says that Ms. Prim had a gender segregation policy and inquired as to plaintiffs interaction with men on the Floor to be certain that the Chicago project would permit a suitable environment for males and females. When Ms. Hughes returned from the Chicago project, Ms. Langley says that plaintiff did so well that John Prim recommended that she be brought back to Prim Hall on a full-time basis. After the plaintiff was let go in 1995, Ms. Langley recalls that she was asked to place advertisements for various positions at Prim Hall, including the assembly department. Ms. Langley says that she reminded Pam Prim of plaintiff but she told her not to call Hughes. This deponent also says that plaintiff was the only woman listed in the personnel files to have worked on the Floor prior to “the threat” of Ms. Hughes’s lawsuit in 1997. Ms. Langley also advises that there was a clock displayed on the Floor for years that showed a woman wearing only a lace negligee and states that certain female employees had complained about sexual harassment at Prim Hall.
Plaintiff also offers the affidavit of Arnold Beal in opposition to the motion for summary judgment. Mr. Beal worked in the electrical department from 1991 or 1992 until 1998 and opines that the plaintiff was more qualified to work there than either Mr. Bova or Mr. LaBombard because plaintiff could read schematics better and perform more sophisticated wiring tasks than they could.
*897 The plaintiff’s papers do not specifically address the employment-at-will issue raised by the defendant, focusing rather on the claim of gender discrimination in violation of the Human Rights Law (Executive Law § 290 et seq.).
DISCUSSION
It is undisputed that the plaintiff was hired without a written contract of employment; thus she was an employee-at-will. In Patrowich v Chemical Bank (98 AJD2d 318 [1st Dept], affd 63 NY2d 541 [1984]), the plaintiff was employed by the defendant without a written contract and brought a lawsuit alleging violations of Federal and State law based on discrimination with causes of action also set forth based on breach of employment agreement and wrongful discharge. In reversing the lower court and granting partial summary judgment to the defendant dismissing those claims founded on breach of contract and wrongful discharge, the Appellate Division stated that “there is no cause of action recognized in New York for abusive or wrongful discharge of an employee” (supra, 98 AD2d, at 323). As such, there is no basis for the plaintiff to pursue a claim of wrongful termination as set forth in the second cause of action in the complaint. (Sabetay v Sterling Drug, 69 NY2d 329, 333, 336-337 [1987]; Traviglia v Fleet Bank, 219 AD2d 644 [2d Dept 1995]; Janneh v Regency Hotel, 870 F Supp 37, 40 [ND NY 1994]; Melnyk v Adria Labs., 799 F Supp 301, 306-308 [WD NY 1992].) Defendant is therefore granted partial summary judgment dismissing the second cause of action.
The court’s attention thus turns to the plaintiff’s claim founded on a violation of the Human Rights Law. No discussion of an employment discrimination claim is possible without reference to the familiar burden-shifting analysis which follows. To establish a prima facie claim of gender discrimination, a plaintiff must initially show: “(1) that the employee is a member of protected class, (2) that she was discharged, (3) that she was qualified for the position, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination (McDonnell Douglas Corp. v Green, 411 US 792; Ferrante v American Lung Assn., 90 NY2d 623). However, this burden has been referred to as £de minimis’ ” (Schwaller v Squire Sanders & Dempsey, 249 AD2d 195, 196 [1st Dept 1998] [citations omitted]).[2] An inference of discrimination may be shown by circumstantial evidence. (Melnyk v Adria Labs., 799 *898 F Supp, supra, at 313.) If a plaintiff meets this burden, then the burden shifts to the defendant to show that the plaintiff was discharged for a legitimate, nondiscriminatory reason. (Schwaller v Squire, Sanders & Dempsey, at 196.) If the defendant satisfies that burden, then the burden shifts again to the plaintiff. At this point, however, a plaintiff can no longer rely on the presumption of the inference of discrimination present at the prima facie showing since that presumption drops from the case once the defendant meets its burden. (Ferrante v American Lung Assn., 90 NY2d 623, 629 [1997]; St. Mary’s Honor Ctr. v Hicks, 509 US 502 [1993].)
A plaintiff’s burden at this final stage of the burden-shifting analysis, keeping in mind that the motion before the court is one for summary judgment, is to establish that there is a question of fact as to whether the reasons offered for her termination were pretext for discrimination. (Ferrante v American Lung Assn., 90 NY2d, supra, at 629-630.) This burden may be met by showing “ 'both that the reason was false, and that discrimination was the real reason’ ” {supra, at 630, quoting St. Mary’s Honor Ctr. v Hicks, supra, at 515 [emphasis in original]). But such a heavy showing is not required to be proven by a plaintiff in order to defeat a summary judgment motion. Rather, to defeat the motion only the existence of a factual issue must be sufficiently shown by the plaintiff. (Ferrante v American Lung Assn., supra, at 625-626, 629-630.) The plaintiff may accomplish this by showing “ ‘ “that there is a material issue of fact as to whether (1) the employer’s asserted reason for [the challenged action] is false, or unworthy of belief and (2) more likely than not the employee’s [gender] was the real reason” ’.” (Supra, at 630 [emphasis in original; citations omitted]; accord, Gallagher v Delaney, 139 F3d 338, 350 [2d Cir 1998], supra [summary judgment is precluded where the employer’s intent is factually disputed].) Mandating that a plaintiff do more at this final stage than prove the existence of a material issue of fact would significantly raise the bar in opposing a motion for summary judgment and alter the essential role of a court on a summary judgment motion, requiring it to engage in issue determination rather than issue finding. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]; cf., Belfi v Prendergast, 191 F3d 129 [2d Cir 1999] [sum *899 mary judgment denied to plaintiff on title VII claim where she relied on the inconsistency and pretextual nature of the defendant’s explanations for alleged discrimination without providing proof of intent to discriminate].)
With regard to plaintiff establishing a prima facie case of gender discrimination, it is obvious that the plaintiff, as a female, is a member of a protected class. It is equally clear that the plaintiff was discharged and it is undisputed that she was qualified for the position in the electrical department. To show prima facie that she was discharged under circumstances giving rise to an inference of discrimination, the plaintiff has offered circumstantial evidence that she was treated less favorably than the men who were retained in the reduction-in-force.[3] That primarily takes the form of the affidavit testimony of Messrs. Tremblay and Beal who state that she could perform more sophisticated wiring tasks than the men who were retained in the electrical department, Messrs. Bova and LaBombard, coupled with the testimony of Ms. Langley that there was a policy of gender segregation at Prim Hall. This is arguably sufficient to meet the plaintiffs “feathery” burden at this stage of the motion, although the court notes that the plaintiff herself could not state whether those men were better qualified than she was.[4]
Once the burden thus shifts to the defendant, it must sufficiently demonstrate a legitimate, nondiscriminatory reason for plaintiffs termination, and in this case, it has: a reduction-in-force in which Ms. Hughes was let go in favor of retaining Messrs. Bova and LaBombard who had vocational training and could work in both the electrical and mechanical departments.
The focus thus turns to whether the plaintiff has sufficiently established a question of fact as to whether this proffered rea *900 son is merely pretext for gender discrimination. Pretext is not shown simply by offering favorable comments pertinent to the plaintiff or showing that the plaintiff received favorable evaluations. (Ezold v Wolf, Block, Schorr & Solis-Cohen, 983 F2d 509, 528 [3d Cir], cert denied 510 US 826 [1993].) As such, the good work performed by plaintiff and the recommendation to provide her full-time employment after completion of the Chicago project are not enough. And clearly no references to Ms. Prim’s temperament, the alleged sexual harassment suffered by various women, or even the asserted existence of a certain clock on the Floor depicting a scantily clad woman show pretext. Indeed, those contentions are largely irrelevant since the plaintiff’s employment discrimination claim is founded on disparate treatment/disparate impact and not sexual harassment. (See, Gallagher v Delaney, 139 F3d, supra, at 346; Zveiter v Brazilian Natl. Superintendency of Merchant Mar., 833 F Supp 1089 [SD NY 1993] [sexual harassment claims are of two types: hostile work environment which concerns sexually offensive conduct creating a pervasive hostile environment for workers, and quid pro quo harassment where an employer alters an employee’s work conditions or withholds an economic benefit due to the employee’s refusal to accede to sexual demands].) Moreover, the comments of Pam Prim referenced in the affidavits of Ms. Langley and Ms. Trombley are also not sufficient standing alone to establish pretext. The comment to Ms. Trombley regarding the Floor not being “a woman’s place to be” was not made to plaintiff or in reference to her and is not specific to the time of plaintiff’s discharge. And the comment to Ms. Langley that it would “really rock the boat down there in assembly if another woman was hired” was also not made to or in reference to Ms. Hughes nor was it made at the time of plaintiff’s discharge. As counsel for the defendant noted at oral argument, statements relied on as evidence of discrimination need to be related in time to the claimed discriminatory discharge.[5] But, while those statements referenced above are not committed to any particular time and *901 thus cannot be indicative of direct discrimination at the time of Ms. Hughes’s discharge, the defendant must also recognize that the statements may relate to the decision-making process since they were uttered by Ms. Prim who made hiring and firing decisions. And that decision was made in the face of plaintiffs supervisor recommending another worker to be let go who, the supervisor insists, was less qualified than Ms. Hughes, a conclusion disputed by Ms. Prim. When all this evidence is taken as a whole, and with the court construing it in favor of the nonmovant which it is required to do on a motion for summary judgment, the court finds that the evidence that plaintiff has provided, while certainly not the strongest, raises an issue of fact as to whether the reason offered by defendant for plaintiffs termination is unworthy of belief and more likely than not the plaintiff was let go from the electrical department because she was a woman. As such, the court denies that part of the motion which seeks summary judgment dismissing the claim for gender discrimination based on a violation of the Executive Law.
Any relief requested which is not specifically granted herein is denied. No motion costs are awarded to any party.

. Since the plaintiff apparently did not obtain a right-to-sue letter from the Equal Employment Opportunity Commission, the Federal claim could not be pursued. An academic query is raised with regard to whether this court would have jurisdiction over an alleged violation of Federal law, but based on the status of this matter, that obviously need not be decided.

. Elements of employment discrimination claims, whether arising under either Federal or State law, are virtually identical; thus reference to either *898 Federal or State citation, or both, is appropriate. (Gallagher v Delaney, 139 F3d 338, 345 [2d Cir 1998]; Lacoparra v Pergament Home Ctrs., 982 F Supp 213, 225 [SD NY 1997]; Melnyk v Adria Labs., 799 F Supp 301, 312 [WD NY 1992], supra.)

. In Adeniji v Administration for Children Servs. (43 F Supp 2d 407, 424 [SD NY 1999]), a claim of disparate treatment was described as one “in which the employer ‘simply treats some people less favorably than others because of their [membership in a protected class]’ * * * To state a disparate treatment claim * * * [a plaintiff] must allege: (1) [s]he is a member of a protected class; (2) [s]he satisfactorily performed the duties of h[cr] position; (3) [s]he was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of membership in the protected class.” (Citation omitted.)

. The deposition testimony of the plaintiff, not addressed specifically in the affidavits on this motion but nonetheless provided as part of the record before the court, reveals that the plaintiff did not know of the prior experience of Messrs. Bova and LaBombard; rather, she asserts that they were less qualified than her because she had more time in the electrical department.

. In support of this conclusion, defendant’s counsel cited to the unreported case of Nawrocki v Daemon Coll. (1997 WL 211338, 1997 US Dist LEXIS 5606 [WD NY, Apr. 25, 1997, Elfvin, J.]). That case stated that isolated remarks made to a plaintiff are not enough to defeat summary judgment where the remarks are not temporally proximate to the discharge and unrelated to the decisional process. That case cited, among others, Rush v McDonald’s Corp. (966 F2d 1104, 1116 [7th Cir 1992]) which reached the same conclusion in applying the standard set forth in Price Waterhouse v Hopkins (490 US 228 [1989]), that: “ ‘[r]emarks at work that are based on sex *901 stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision.’ ”