85 N.Y.2d 638 (1995)
651 N.E.2d 872
628 N.Y.S.2d 4
In the Matter of George Hanchard, Appellant,
v.
Facilities Development Corporation, Respondent.
Court of Appeals of the State of New York.
Argued March 28, 1995
Decided May 4, 1995.
Steven U. Teitelbaum, Albany, for appellant.
Dennis C. Vacco, Attorney-General, Albany (John McConnell, Jerry Boone and Peter H. Schiff of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS and LEVINE concur with Judge TITONE; Judge BELLACOSA dissents and votes to reverse in a separate opinion in which Judges SMITH and CIPARICK concur.
*640 TITONE, J.
In this CPLR article 78 proceeding, petitioner claims that his termination from employment was arbitrary and capricious because respondent failed to follow its own pretermination procedures established in its Employee Handbook. Because respondent has substantially complied with its stated policies, and any departure therefrom is attributable to petitioner's own failure to cooperate, we affirm the Appellate Division's order dismissing the petition.
Petitioner George Hanchard, a licensed architect, began his employment with respondent Facilities Development Corporation on September 8, 1982 as an architect holding the title of Development Administrator II. Petitioner was terminated from that position on June 28, 1991. At the time of his termination, petitioner was 57 years old. Petitioner was notified of the termination orally on June 14, 1991, and by letter dated June 13, 1991, which stated: "[t]his is to notify you that you are being charged with being materially deficient in your work as a result of recurring performance problems." The letter proceeded to list the areas of deficiency charged against petitioner.
Petitioner instituted this article 78 proceeding to set aside his termination as arbitrary and capricious and for reinstatement and back pay, alleging that respondent failed to follow internal pretermination procedures as outlined in its Employee Handbook and supplements thereto. Specifically, petitioner claimed that respondent failed to give him an opportunity to respond to the charges against him and to provide him with a hearing, which, under company policy, is to be afforded prior to the discipline of "covered employees" such as petitioner who have held full-time employment with respondent for five years or more. Respondent sought dismissal of the petition on the ground, among others, that petitioner failed to exhaust administrative remedies before seeking judicial review and thereby waived his claims. Respondent also claimed that because petitioner was an at-will employee, he could be terminated at any time.
Supreme Court rejected the "exhaustion of administrative *641 remedies" and "waiver" arguments advanced by respondent as misplaced. The court concluded that respondent terminated petitioner without affording him the disciplinary process listed in the Employee Handbook. The court rejected the contention that petitioner was required to pursue further administrative remedies, finding that respondent's conduct would have rendered such attempts futile. Thus, the court held that respondent's action in terminating petitioner was arbitrary and capricious, and granted the petition by setting aside the termination and reinstating petitioner with back pay and other incidental benefits.
A divided Appellate Division reversed and dismissed the petition, holding that respondent substantially followed the method of employee performance review outlined in its various policy statements. Specifically, the Court found that respondent's supervisors attempted to notify petitioner of his deficiencies and to discuss petitioner's performance with him, but petitioner refused to participate in any constructive performance evaluations. The Court also concluded that petitioner failed to pursue available administrative remedies before seeking judicial relief, and that such efforts would not have been futile.
Two Justices in dissent noted that they did not believe that petitioner was entitled to a hearing pursuant to the 1989 supplemental discipline policies under the circumstances. However, the dissent concluded that, in light of respondent's claim that petitioner was not entitled to a hearing under the 1987 policies which governed and were followed, respondent could not now benefit by taking the inconsistent position that petitioner failed to exhaust administrative remedies available under the Part II procedures. Citing respondent's insistence that the 1987 procedures applied, the dissent concluded that petitioner's attempts to exhaust administrative remedies would have been futile. Petitioner's appeal to this Court as of right is predicated on the two-Justice dissent at the Appellate Division (see, CPLR 5601 [a]).
Absent an express agreement limiting its duration, an employment relationship is generally presumed to be a hiring at-will, terminable at any time by either party (Sabetay v Sterling Drug, 69 N.Y.2d 329, 333). However, an employer may be bound by express statements in its policy manual limiting its otherwise unfettered right to discharge its employees (see, Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458). A disciplined or *642 terminated employee may seek article 78 review to determine whether the employer contravened any of its own rules or regulations in taking that disciplinary action (see, Matter of Mitchell v Dowdell, 172 AD2d 1032).
The parties here, in effect, agree that respondent did not reserve the right to discharge "covered" employees at any time without cause. The parties also do not dispute that respondent expressly limited its right to discharge members of that group by establishing a mandatory pretermination process in its Employee Handbook and supplements. The primary question facing this Court is whether respondent substantially abided by its own policies in terminating petitioner's employment.
Our analysis in this case necessarily begins with a review of respondent's internal disciplinary policies and procedures. In 1987, respondent issued an Employee Handbook containing disciplinary procedures to be followed in the event of an employee's problematic performance evaluation. Respondent's stated policy is to assist troubled employees to improve work performance rather than terminate them, where possible. To meet that goal, the handbook sets forth a progressive disciplinary plan, consisting largely of counseling techniques. First, supervisors faced with a problem employee are instructed to hold an informal discussion with the employee and indicate areas needing improvement. The supervisor is advised to keep his or her own supervisor apprised of the employee's progress. If performance does not improve during the informal stage, more formal steps may be implemented. These may include, where appropriate, counseling with respondent's Executive Director, legal counsel, or the Affirmative Action Officer. The employee's supervisor is directed to prepare a memorandum for the Human Resources Manager explaining the problem areas, and a work plan to measure and guide improvement. The employee may also be placed on probation for a 30-day period, and appropriate action, including termination, may be taken, depending on the degree  or lack  of improvement shown. The handbook provisions permit the employee to submit documentation during any of the aforementioned stages, but do not provide for a pretermination hearing or other recourse for an employee who fails to cooperate with the progressive counseling program.
In December of 1988, respondent issued the "Part II Progressive Disciplinary Procedures" which supplement the 1987 *643 Employee Handbook. These policies were again supplemented in 1989. The provisions cumulatively provide that an employee who has completed five years of full-time service with the corporation "shall be designated a `covered individual' * * * [who] shall [not] be removed from his or her position or subjected to any lesser disciplinary action except for misconduct or insubordination." The policies establish that while noncovered employees have no right to a hearing prior to discipline or termination, covered employees "shall be entitled to submit an answer" to charges filed pursuant to the Progressive Disciplinary Procedures, and must request a hearing in writing regarding such allegations within five working days. The policies also provide for an appeal of the hearing determination to the corporation's board of directors at the disciplined employee's request.
Importantly, a section entitled "Prerequisite Language" states that the supplemental Progressive Disciplinary Procedures "do not exempt covered status employees from discipline in any case in which the employee has been found to be incompetent or materially deficient in performance or insubordinate so long as the [disciplinary] procedures outlined in the [1987 Employee Handbook] are also being utilized" (emphasis added). Respondent's position on appeal is that this language means that where an employee is charged with materially deficient work performance, as petitioner here was, the Part II protections are not mandatory  even for a covered employee  if the progressive counseling program put in place in 1987 has been followed. Notwithstanding its construction of the "Prerequisite Language", respondent claims that it applied the Part II procedures to petitioner's case as well, given its failure to induce petitioner to cooperate with the progressive discipline counseling program. Even assuming that the use of the term "also" in the Prerequisite Language entitled petitioner to the protections afforded by the 1987 and the Part II procedures as the dissent contends (see, dissenting opn, at 648), we conclude that respondent's actions are not subject to annulment as arbitrary and capricious because respondent afforded petitioner with the process outlined by both sets of policy statements.
Early performance evaluations of petitioner's work unquestionably reveal that he was a productive member of respondent's staff and positively contributed to the organization. However, beginning in June of 1987, petitioner's evaluations began to decline. At that time he was issued a "needs improvement" *644 rating on a performance evaluation prepared by his supervisor. In accordance with respondent's company policy, the Human Resources Manager reviewed that rating and determined that it was substantiated. Subsequent memoranda drafted by several of petitioner's supervisors reveal that his projects were largely behind schedule, that he became disruptive, exhibited an insubordinate attitude with superiors, and alienated clients and co-workers.
Significant documentation placed in petitioner's personnel file by his supervisors attests to the attempts at counseling which petitioner consistently rebuffed. For example, petitioner refused to discuss his performance evaluations with at least two of his supervisors unless they first answered his questions in writing  an unorthodox procedure. When one supervisor refused to proceed in that manner, petitioner responded: "In that case you can go to hell." The record also reveals that in May of 1991, petitioner refused to accept a copy of his performance evaluation and declined to meet with superiors to discuss it. Indeed, record evidence makes it abundantly clear that petitioner's effective refusal to cooperate with supervisors who were evaluating his performance rendered further attempts by respondent to resolve petitioner's performance problems through counseling unproductive and futile. In compliance with the 1987 disciplinary procedures, prior to issuing the letter charging petitioner with materially deficient performance, the Human Resources Manager and the Affirmative Action Officer reviewed and investigated the charges against petitioner. Respondent's Executive Director accepted the charges and the proposed penalty of termination after consulting with respondent's counsel. Petitioner did not submit his own documentation at any point along the continuum or in any way challenge or respond to the charges lodged in the letter advising him of his material deficiency. Accordingly, we conclude that respondent substantially conducted all of the evaluative steps delineated in the 1987 policies, and any departure therefrom was due to petitioner's failure to cooperate in the counseling program with his supervisors.
Respondent additionally complied with its Part II procedures by issuing a charging instrument against petitioner which contained the proposed penalty of termination. The fact that the charging letter represented unequivocally that petitioner's continued performance problems required termination as the appropriate discipline did not, and could not, "functionally and formally wipe[ ] out Hanchard's right to a hearing" *645 as the dissent contends (dissenting opn, at 647). Assuming that petitioner was entitled to a disciplinary hearing pursuant to those provisions, under respondent's policy it is the exclusive responsibility of the employee to request that relief. The employment manual does not require the employer to offer a hearing to the disciplined employee  even in the case of a member of the covered class. Petitioner does not deny receiving copies of the Part II procedures, and thus cannot claim that he was deprived of notice that this administrative remedy was available at his request. In light of the fact that petitioner never sought any relief from respondent, and indeed was the party responsible for frustrating any meaningful counseling through the 1987 progressive disciplinary program, there is no basis to conclude on this record that petitioner's attempts to cooperate with his employer or to seek administrative review of his work performance or the determination to discharge him would have been rebuffed (cf., Matter of Amsterdam Nursing Home Corp. v Commissioner of N. Y. State Dept. of Health, 192 AD2d 945, 947).
We have reviewed petitioner's remaining contentions and conclude that they lack merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
BELLACOSA, J. (dissenting).
We respectfully dissent and vote to reverse and reinstate the Supreme Court judgment granting the petition.
Petitioner Hanchard, a licensed architect, was employed as a Development Administrator from 1982 until his termination in 1991 by the Facilities Development Corporation (FDC), a New York State public benefit corporation. In 1987, following a number of favorable review evaluations, Hanchard received a "needs improvement" evaluation for the first time. He received further unfavorable work performance evaluations in 1988 and 1989. Upon receipt of his job evaluation for 1989, Hanchard refused to discuss the matter with his supervisor.
Twice in early 1991, Hanchard's supervisor sent various reports to FDC's Human Resources Manager, the Affirmative Action Officer and the Deputy Executive Director, indicating the problems with Hanchard's work and attitude. Hanchard was notified of the existence of these reports, but refused to accept or discuss the reports. On May 15, 1991, Hanchard's supervisor prepared a memorandum for her supervisor detailing Hanchard's work performance and concluded that he was *646 performing unsatisfactorily. She recommended Hanchard's "immediate termination," adding that his two-week notice be served as vacation to avoid office disruption by his presence at work. The report was signed and approved by several superiors.
On June 13, 1991, the Human Resources Manager drafted a termination letter charging Hanchard with being "materially deficient in [his] work" and informing him that his employment was being terminated effective June 28, 1991. On June 14, at the close of business, Hanchard was orally notified of the contents of the termination letter and was instructed that his services were no longer desired. He was directed to immediately vacate the premises and informed that he must schedule an appointment to retrieve his personal belongings. Because he refused to accept the termination letter, it was ultimately mailed to his home.
Hanchard promptly commenced this CPLR article 78 proceeding to set aside the determination firing him. He sought reinstatement with back pay and other incidental benefits. Supreme Court granted the petition, finding that Hanchard was a "covered employee" as set forth in the Employee Handbook, and that he was terminated in violation of the employer's rules and policies "as outlined in the Employee Handbook". The court also rejected FDC's assertion that Hanchard had failed to exhaust all administrative remedies by failing to request a hearing. The Appellate Division, by a vote of 3 to 2, reversed and dismissed the petition.
The dispositive focus given to this appeal is "whether respondent substantially abided by its own policies in terminating petitioner's employment." (Majority opn, at 642.) The majority additionally or alternatively concludes "that respondent's actions are not subject to annulment as arbitrary and capricious" (majority opn, at 643).
We respectfully suggest that the dispositive framework is incomplete and fails to take account of the termination procedures that the FDC avoided or evaded in this case. The complete assessment requires examination as to whether the termination procedures actually executed in discharging Hanchard fell materially short of the express limitations and employee protections contained in the written Employee Handbook (see, e.g., Murphy v American Home Prods. Corp., 58 N.Y.2d 293). That is the full issue, in our view.
According to the "Part II Progressive Disciplinary Procedures" *647 contained in FDC's Employee Handbook, an employee with five years of full-time services is designated a "covered individual". Hanchard, who worked for FDC for nine years, is unquestionably a "covered individual". He was thus entitled, at least, to "be advised in writing" of the charges, together with notice of "the penalty the corporation proposes to impose" (emphasis added). The disciplinary procedure further grants a covered, charged employee the opportunity "to submit an answer to such allegations." The employee has the option to accept the discipline proposed, by writing the word "accepted" on the written charge, dated and signed, or to request a hearing to challenge the charges. If the manual-prescribed hearing is invoked and the employee is then found guilty of the charges, the employee also may appeal the decision to the board of directors.
Not one of those protocols or protections was allowed by the employer in this case. FDC compressed the entire transaction into a one-step event: notice of charges, act of firing and expulsion from the employment premises. The termination notification and expulsion cut off any realistic opportunity for Hanchard to respond to the charges or to the proposed discipline. Specifically, the letter declared that "[t]he gravity of these matters as well as the number of projects where you have exhibited continual performance problems * * * require the termination of your employment effective June 28, 1991." The letter added that FDC was not in need of Hanchard's services during his two vacation weeks and functionally fired him on the spot that afternoon in one fell swoop. He was not notified of charges and the "propose[d]" discipline, as required by the progressive disciplinary procedures. Moreover, rather than being simply a charging letter, as the majority has characterized it, the letter functionally and formally wiped out Hanchard's right to a hearing to challenge any charges and separated him once and for all from his job and the employment site. The Handbook protections and factual circumstances of this case provide no reasonable basis to conclude that FDC came anywhere near compliance with its own written disciplinary procedures.
A word is also necessary on the proposition tendered to exempt FDC from applying the Handbook's protections to Hanchard at all. The introductory provision of the "Part II Progressive Disciplinary Procedures," entitled "Prerequisite Language," states that the procedures "applying to `covered individuals' do not exempt covered status employees from *648 discipline in any case in which the employee has been found to be incompetent or materially deficient in performance * * * so long as the procedures outlined in [respondent's] Disciplinary Procedures dated June 4, 1987, are also being utilized" (majority opn, at 643 [emphasis ours]).
The argument advanced by FDC, that the 1988 and 1989 disciplinary procedures, which entitle a covered employee to prior notice and a hearing before termination, are not applicable to covered employees found to be "materially deficient in performance," does not withstand analysis. The proper meaning of this provision is that FDC may discipline a covered employee for materially deficient performance only when it has followed both the progressive disciplinary procedures outlined in the 1987 Employee Handbook and the progressive disciplinary procedures contained in the 1988 and 1989 Handbook amendments. Thus, a covered employee, like Hanchard, internally charged with materially deficient performance, is entitled to two distinct disciplinary protocols upon being given notice of disciplinary charges  counseling under the 1987 procedures and notice with a right to a manual-prescribed hearing under the 1988 and 1989 covenants  before discipline can be imposed. FDC failed in all respects, and Supreme Court's judgment granting Hanchard's petition should thus be reinstated.
The employer's June 13 "firing letter" and coordinated actions associated with Hanchard's expulsion from the employment premises fell materially short of FDC's own rules of procedure. Invocation of rights by this already fired employee was not only futile at that point, but entirely pointless and frustrated by the fully executed firing. The Handbook's protections, in word and function, temporally pertain to prefiring circumstances, not postfiring reinstatement. FDC acted definitively to insure that the firing in this case was already a formal fait accompli before Hanchard could do anything but depart.
Order affirmed, with costs.