**Martin E. ENOWITZ, Plaintiff,**

v.

**SANWA BUSINESS CREDIT CORPORATION, Defendant.**

No. 93 Civ. 4544 (PKL).

United States District Court, S.D. New York.

Oct. 26, 1995.

Gary D. Friedman, Mayer, Brown & Platt, New York City, for defendant.

Leonard N. Shapiro, New York City, for plaintiff.

---

### MEMORANDUM ORDER

LEISURE, District Judge:

Defendant Sanwa Business Credit Corporation ("SBCC") is in the business of providing business-related financial services. Plaintiff Martin E. Enowitz ("Enowitz") was employed by SBCC from March 30, 1990 to December 31, 1991 as Vice President and Origination Team Leader of SBCC's Merchant Banking Group based in New York. Plaintiff has sued for wrongful discharge and fraudulent misrepresentation regarding his employment agreement. SBCC has moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the grounds that there are no genuine issues of material facts to be tried. For the reasons stated below, defendant's motion for summary judgment is granted.

### DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing that no genuine issue of material fact exists rests with the moving party, and the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See LaFond v. General Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir.1995). However, "[t]o defeat a motion for summary judgment a plaintiff cannot rely on conjecture or surmise and must do more than simply show that there is some metaphysical doubt as to the material facts." *FMC Corp. v. Boesky (In re Boesky Sec. Litig.),* 36 F.3d 255, 266 (2d Cir.1994); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." (citations omitted)). Because the substantive law determines which facts are material in a given case, *see Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir.1991), the Court considers Enowitz's two causes of action separately.

### I. *Wrongful Discharge*

"It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 506 N.E.2d 919, 920, 514 N.Y.S.2d 209, 211 (1987); *see Hanchard v. Facilities Dev. Corp.,* 85 N.Y.2d 638, 641, 651 N.E.2d 872, 874, 628 N.Y.S.2d 4, 6 (1995). The at-will

relationship of employment contains two elements: (1) that the employment is for an indefinite term, and terminable by any party at any time; and (2) that the employment relationship is terminable for any reason or for no reason at all.

## A. *Duration of Employment*

■ Enowitz argues that he was assured of "long-term" employment, in contrast to the " 'at-will' or short term theory now conveniently argued by the defendant." Affidavit of Martin E. Enowitz in Opposition ("Enowitz Aff.") ¶ 5; *see id.* ¶ 9, 22; Plaintiff's Memorandum of Law in Opposition ("Enowitz Mem.") at 7. At the outset, the Court notes that at-will employment is not properly the equivalent of short-term employment, nor is it the opposite of long-term employment. The at-will relationship is properly contrasted with employment for a definite term. The hallmark of at-will employment is not that it is short term, but that it is for an indefinite term. *Cf. Jones v. Dunkirk Radiator Corp.*, 21 F.3d 18, 22 (2d Cir.1994) (term ascertainable because measured by either of two events).

Enowitz points to various facts which he claims, taken together, "resulted in an undertaking to employ the plaintiff for an extended duration, at the very least five to seven years." Enowitz Mem. at 2. Perhaps due to the above noted identification of at-will with short-term, Enowitz has failed even to allege a modification of the durational element of the employment-at-will rule, since he provides no evidence from which a definite term of employment could be ascertained. The Court finds that Enowitz's bare assertions that the nature of his work implied a duration of five to seven years, *see, e.g.,* Enowitz Mem. at 2, to be too vague to satisfy the requirement of an ascertainable, definite duration of employment.[1]

## B. *Unfettered Right of Termination*

■ The Court next turns to the second element of the employment-at-will rule, the right to terminate for any reason or no reason, in order to determine if, taking the facts as alleged by Enowitz as true, and drawing all reasonable inferences in favor of Enowitz, a jury could reasonably find that the presumption of at-will employment has been rebutted.

■ In order to rebut the presumption of employment at will, a plaintiff must demonstrate that the right to terminate for any reason or no reason was expressly limited for consideration. *See Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 463–64, 443 N.E.2d 441, 444, 457 N.Y.S.2d 193, 196 (1982). Although rebuttable, New York courts have outlined an "explicit and difficult pleading burden," *Sabetay,* 69 N.Y.2d at 334–35, 506 N.E.2d at 922, 514 N.Y.S.2d at 212, for the plaintiff attempting to demonstrate that the presumed at-will relationship was circumscribed so that an employer can only terminate an employee for cause or according to specific procedures. *See Pisana v. Merrill Lynch & Co.,* 1995 WL 438715, at *11 (S.D.N.Y.1995).

The facts relied on by Enowitz in support of his contention that he was not an at-will employee are: alleged oral assurances received during interviews and a specific oral assurance from Marybeth Hoffman ("Hoffman"), Vice President of the Merchant Banking Group, during negotiations related to his offer of employment; a letter confirming the offer of employment from Hoffman; two documents received after his acceptance of employment regarding employee benefits; and annual reports and brochures of Sanwa Bank and SBCC. The Court finds that no reasonable jury could find from this proffered evidence an express limitation of SBCC's right to terminate the employment relationship at will.

First, even crediting Enowitz's testimony of unspecified "assurances . . . of long-term employment," Enowitz Aff. ¶ 10, during the course of interviews,[2] and the specified dis-

---

1. Because the Court finds that Enowitz alleges no ascertainable, definite duration of employment, the Court does not consider the effect of the statute of frauds on the parties' agreement.

2. Enowitz contends that several SBCC executives gave him express oral assurances of long-term employment, although he cannot recall any specific assurances made by any specific SBCC executive except one statement by Hoffman during

cussion with Hoffman regarding the period of employment, see id. ¶ 15,[3] these assurances do not rise to the level of an "express limitation on the employer's right of discharge," *Sabetay*, 69 N.Y.2d at 336, 506 N.E.2d at 922–23, 514 N.Y.S.2d at 213. The Court finds that it is not reasonable to infer from the vague testimony regarding unspecified assurances, and the statement by Hoffman that both SBCC and Enowitz intended their relationship to be long-term, that SBCC had expressly limited its right to terminate the relationship for any reason or for no reason. Rather, the assurances of an expected long-term relationship are unremarkable expressions of optimism characteristic of the start of an employment relationship.

Second, Enowitz interprets a provision in his offering letter regarding the return of his signing bonus as necessarily implying a relationship of longer than one year. The letter listed the offered position's title and benefits, but did not refer to duration of employment except to state that a portion of the offered signing bonus must be refunded if Enowitz were to "leave within the first year." *See* Letter from Hoffman to Enowitz, Mar. 20, 1990, at 1, *in* Appendix to Memorandum in Support of Defendant Sanwa Business Credit Corporation's Motion for Summary Judgment ("SBCC App.") Ex. 3. Enowitz negotiated a change in this term, namely that a portion of the signing bonus would be refunded if Enowitz were to *"resign"* within the

first year. *See* Enowitz Aff. ¶ 25. The Court finds that the negotiated change in the terms from requiring a refund if Enowitz "leave[s]" within one year, to requiring a refund if Enowitz "resign[s]" within one year, does not constitute an express limitation of SBCC's right to terminate for any reason or for no reason. The term of the offer contemplates the possibility of termination during the first year. As changed, even if the term were read as implying that no termination were possible during the first year other than by resignation, the term would also necessarily imply that termination during the second year is unfettered. Thus, because Enowitz was terminated during his second year, it would be unreasonable to infer that his termination was wrongful.

Third, Enowitz relies on employee benefit documents as creating the inference that SBCC had limited its right of termination.[4] The Court finds that these employee benefit documents do not permit a reasonable inference that SBCC expressly limited its right to terminate Enowitz. Even if the bulk of the benefits documents could reasonably be interpreted as limiting SBCC's right of termination, the express disclaimers on the covers of the two documents would render such an interpretation unreasonable.[5] *See Pisana*, 1995 WL 438715, at *11 ("Handbooks with disclaimers such as those at issue here do not give rise to an implied employment contract").

---

the negotiation of his offer of employment. At his deposition, Enowitz testified about the substance of each interview, and did not recall discussing with any of his interviewers the duration of any possible position with SBCC. *See generally* Deposition of Martin E. Enowitz, April 28, 1994 ("Enowitz Dep."), at 59–74, *in* Appendix to Defendant Sanwa Business Credit Corporation's Reply Brief ("SBCC Reply App.") Ex. 2. The possible exception to this is a meeting with an industrial psychologist, who was to test Enowitz "to assure we have a good long-term fit with employees." *Id.* at 67.

3. Enowitz asserts that after receiving the offer of employment, but prior to accepting it, he telephoned Hoffman to confirm that his employment, if accepted, "would be for a long period of time," and Hoffman replied "Oh, absolutely." Enowitz Aff. ¶ 15.

4. After accepting the offered position, Enowitz was furnished with an employee benefit enroll-

ment package, *see* Enowitz Dep. at 128, and a Summary Guide to SBCC Employee Benefits Program, *see id.* at 160.

5. Included on the face of the documents respectively were express disclaimers that "[n]o statement or information presented ... represents an offer, or guarantee of employment with SBCC" and "[n]o statement or information presented ... represents a right to remain employed by the company." Enowitz Dep. Ex. 6, 7, *in* SBCC Reply App. Ex. 3. Enowitz states that the disclaimers did not cause him to question his understanding of long-term employment agreement because he was a grade 16 employee. *See* Enowitz Dep. 129, 161. However, both documents refer at several points to "all grades," and the employee benefit plan document refers at points to specific grades, including "[g]rades 14 and above," "[g]rades 17 and above," and grades "16+."

Finally, Enowitz refers to documents reflecting the relationship between SBCC and Sanwa Bank, SBCC's parent company, as conveying an assurance that he was being hired for a long-term position. The annual reports and brochures, directed to the public at large and making no mention of employment relationships, cannot reasonably be read to limit SBCC's right to terminate Enowitz.

Combining all of the above evidence does nothing to strengthen Enowitz's claim. The vague assurances of long-term employment, the offering letter, the benefits documents with accompanying disclaimers, and the annual reports and brochures do not together permit a reasonable inference that SBCC expressly limited its right to terminate Enowitz for any reason or for no reason. Instead, taken together, the record demonstrates optimism, which is typical of the start of any at-will employment relationship, that the relationship will be mutually satisfactory to the parties.

In sum, the record, viewed most favorably to Enowitz, does not support a reasonable inference that SBCC expressly limited the at-will employment relationship, and therefore SBCC is entitled to judgment as a matter of law.

C. *Consideration*

■ Even if the record, taken together, allowed an inference that SBCC had expressly limited its rights, Enowitz has failed to produce evidence of detrimental reliance on this limitation as required by *Weiner.* The record indicates that Enowitz was unemployed at the time he approached SBCC, and he has been unable to articulate any opportunities he forewent in order to accept the offer of employment by SBCC. *Cf.* Deposition of Martin E. Enowitz, June 29, 1994, at 328. Therefore, even if an inference of limitation on the right of termination were reasonable, SBCC would be entitled to judgment as a matter of law. *See Novinger v. Eden Park Health Servs., Inc.,* 167 A.D.2d 590, 592, 563 N.Y.S.2d 219, 221 (3d Dep't 1990) ("[T]he uncontroverted evidence that plaintiff was unemployed at the time she accepted defendants' job offer and first saw the personnel policy manual two weeks thereafter defeats any claim of detrimental reliance, an essential element of her cause of action." (citing *Weiner*)).

II. *Fraudulent Misrepresentation*

■ Enowitz asserts a cause of action for fraudulent misrepresentation in his papers in opposition to the motion, although this cause of action is not readily discernible in the complaint. Nevertheless, the Court may address this cause of action, and deem the complaint amended to include it, based on the evidence and arguments submitted on the motion. *See Clomon v. Jackson,* 988 F.2d 1314, 1323 (2d Cir.1993).

■ In order to present a claim for fraudulent misrepresentation, "plaintiff must prove that a misrepresentation was made as to a material fact which was false and was known to be false at the time it was made, that the misrepresentation was made to induce reliance by the plaintiff and the plaintiff did so rely to his injury." *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 235 (S.D.N.Y.1989) (citing *Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987)). Enowitz argues that SBCC misrepresented its financial health, and that in reliance on this misrepresentation, Enowitz accepted employment with SBCC to his injury. However, he only states on "information and belief" that SBCC knew these assurances of financial good health to be false. *See* Enowitz Aff. ¶ 10; *cf. Finnegan v. Board of Educ.,* 30 F.3d 273, 274 (2d Cir.1994) (summary judgment properly granted where plaintiff offered "only conclusory allegations"). In addition, Bernard J. McKenna, the president and chief executive officer of SBCC between 1989 and 1993, testified that in March of 1990, when Enowitz was hired, that SBCC's portfolio of loans was "in decent shape, reasonably good shape[,] no significant problems." *See* Deposition of Bernard J. McKenna, Nov. 3, 1994, at 62, *in* SBCC App. Ex. 4.

The evidence offered by Enowitz does not allow a reasonable inference that SBCC knew, at the time Enowitz was hired, that its operations in the New York office were in "dire straits," Plaintiff's Memorandum in

Sur–Reply in Opposition to Motion for Summary Judgment at 5. Enowitz relies on two memoranda, received within months of his hiring, as indicating overall financial ill-health. However, even if these memoranda demonstrate overall financial ill-health, they do not indicate that this ill-health existed when Enowitz was hired, much less that the financial ill-health had been known to SBCC when Enowitz was hired. Rather, the May 11 Hoffman Memorandum, for example, indicates that, *in May*, one deal caused concern because it had not yet been sold, and that two others would soon cause concern if not sold. *See* Memorandum from Hoffman to Enowitz, May 11, 1990, at 1, *in* Plaintiff's Appendix to Memorandum in Opposition Ex. B. The other memorandum relied on by Enowitz similarly does not permit an inference of knowledge on the part of SBCC when Enowitz was hired.

Because of the lack of evidence from which might be drawn an inference of knowledge on the part of SBCC, in March of 1990, of its financial ill health, SBCC is entitled to judgment as a matter of law on Enowitz's claim for fraudulent misrepresentation. *See Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) ("[W]here the nonmoving party bears the burden of proof as to a particular issue, the moving party may satisfy his burden under Rule 56 by demonstrating an absence of evidence to support an essential element of the nonmoving party's claim."); *Dowd v. IRS*, 776 F.2d 1083, 1084 (2d Cir.1985) (reliance on negative inferences from demeanor of witnesses insufficient to present triable issue of fact).

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment with respect to all claims is HEREBY GRANTED.

**SO ORDERED.**