SEYMOUR ZOLOTAR, Respondent v NEW YORK LIFE INSURANCE COMPANY, Appellant.

First Department, November 26, 1991

### APPEARANCES OF COUNSEL

*Christopher S. Rooney* of counsel (*Robert C. Shenfeld* with him on the brief; *Jackson & Nash,* attorneys), for appellant.

*Harold S. Elovich* of counsel (*Ira M. Belfer,* attorney), for respondent.

### OPINION OF THE COURT

Ross, J.

The primary issue presented by this appeal is whether plaintiff's employment with defendant was terminable at will.

On October 16, 1953, Mr. Seymour Zolotar joined New York Life Insurance Company (New York Life) as an apprentice underwriter, and thereafter, pursuant to a written agreement, executed on or about April 16, 1954, with New York Life, he became a soliciting agent.

It is undisputed that this agreement, entitled soliciting agent's contract (contract), authorized Mr. Zolotar, as a field underwriter, to solicit applications for various insurance policies issued by New York Life, and specified the commissions that he would receive for performing that service. Paragraph 9 provides that either Mr. Zolotar or New York Life, as the parties to the contract, "may, with or without cause, terminate this contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated".

In order to provide another monetary incentive, in addition to commissions, to soliciting agents like Mr. Zolotar, New

York Life offered a system of benefits (Nylic benefits), including retirement benefits, to those agents, "who qualified based, in part, upon the volume of life insurance the agent had produced * * * The highest Nylic benefits offered are the Senior Nylic payments, which come into effect at the beginning of a soliciting agent's twenty-first year of soliciting policies for New York Life and increase annually until the agent's thirtieth year".

Nylic benefits are set forth in a handbook issued by New York Life and Mr. Zolotar received a copy. These benefits "are supplemental to and expressly made subject to the soliciting agent's continued employment with New York Life under a soliciting agent's contract".

During a more than 27-year period, extending from April 1954 to November 1981, Mr. Zolotar, continuously operating under the provisions of the contract, produced numerous applications for insurance policies for New York Life, and in exchange he received commissions and Nylic benefits.

Sometime in 1981, New York Life discovered that Mr. Zolotar had improperly been submitting insurance applications, containing the signature of a physician on the medical portion of those application forms who had not examined the applicants. Thereafter, New York Life, instead of using paragraph 10 of the contract, providing for termination only for certain stated reasons, used paragraph 9, providing for termination without cause, to terminate Mr. Zolotar. Specifically, by letter dated November 18, 1981, New York Life terminated Mr. Zolotar's employment, without cause, "effective December 18, 1981".

By summons and complaint, dated October 17, 1985, Mr. Zolotar (plaintiff) commenced a wrongful discharge action against New York Life (defendant) for damages, based upon allegations of breach of contract, fraud, and unjust enrichment, as well as a claim for quantum meruit.

Following the joinder of issue and the completion of discovery, defendant moved for summary judgment, dismissing the complaint, and plaintiff cross-moved for partial summary judgment as to liability, and a trial as to damages. By order, entered June 3, 1991, the IAS court denied both the motion and cross motion. Defendant appeals.

The power of employers to terminate employees without cause has come under increasing attack over the last 20 years (see, for example, Note, Protecting Employees At Will Against

*Wrongful Discharge: The Public Policy Exception,* 96 Harv L Rev 1931 [1983]; Uniform Law Commissioners' Model Employment Termination Act [adopted Aug. 1991], as discussed in Samborn, *At-Will Doctrine Under Fire,* Natl LJ, Oct. 14, 1991, at 1, col 4). Nevertheless, in the face of that attack, "[i]t is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party *(Martin v New York Life Ins. Co.,* 148 NY 117, 121)" *(Sabetay v Sterling Drug,* 69 NY2d 329, 333 [1987]). Further, an employee at will in this State can be dismissed "at any time and for any reason or no reason" *(O'Connor v Eastman Kodak Co.,* 65 NY2d 724, 725 [1985], *rearg denied* 65 NY2d 1054 [1985]).

In *Murphy v American Home Prods. Corp.* (58 NY2d 293, 297-301 [1983]), the Court of Appeals unequivocally stated that "[t]his court has not and does not now recognize * * * the tort of abusive or wrongful discharge of an at-will employee. To do so would alter our long-settled rule that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party * * * [S]uch a significant change in our law is best left to the Legislature."

We have repeatedly stated that

"[i]n interpreting a contract, the intent of the parties governs * * * A contract should be construed so as to give full meaning and effect to all of its provisions * * * Words and phrases are given their plain meaning * * * Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement * * *

"Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment" *(American Express Bank v Uniroyal, Inc.,* 164 AD2d 275, 277 [1st Dept 1990], *lv denied* 77 NY2d 807 [1991]; *Consolidated Edison Co. v General Elec. Co.,* 161 AD2d 428, 429-430 [1st Dept 1990]).

Paragraph 9 of the contract between the parties, which defendant used to terminate plaintiff, reads as follows: "Either party hereto may, with or without cause, terminate this contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated."

■ When we apply the methodology for interpreting contracts, set forth in the legal authority, *supra,* to paragraph 9,

we find that, since the plain meaning of that paragraph is that it contains no limitation of any kind, either in duration or in purpose, defendant had "an unfettered right to terminate the employment at any time", meaning plaintiff was an employee at will *(Murphy v American Home Prods. Corp., supra,* at 304; *also see, Waldman v Englishtown Sportswear,* 92 AD2d 833, 835 [1st Dept 1983]). Accordingly, defendant did not breach the subject contract by discharging plaintiff.

One of the plaintiff's contentions is that defendant allegedly breached an implied covenant of good faith and fair dealing by terminating him without cause. Any "party who asserts the existence of an implied-in-fact covenant bears a heavy burden, for it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists" *(Rowe v Great Atl. & Pac. Tea Co.,* 46 NY2d 62, 69 [1978]).

█ In view of the fact that the instant matter involves employment at will, we find meritless this contention about an implied covenant, since "[i]n the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent" *(Murphy v American Home Prods. Corp., supra,* at 304-305; *Sabetay v Sterling Drug, supra,* at 335-336).

Our review of the record indicates that, at time of plaintiff's termination effective December 18, 1981, he was credited with 28 years' service for Nylic benefits and Nylic, as discussed, *supra,* was defendant's supplemental monetary incentive benefit program for soliciting agents.

Although plaintiff does not dispute that defendant has paid and continues to pay him Nylic benefits, calculated on the basis of 28 years' employment, as well as commissions due him concerning policies he solicited prior to his termination, plaintiff alleges that defendant, in bad faith, prevented him from obtaining maximum Nylic benefits, by terminating him before he could complete 30 years of continuous service.

Based upon our examination of the provisions contained in the Nylic handbook, we find that Nylic provides incentive compensation analogous to a bonus, since benefits are paid to soliciting agents in addition to commissions. The word "bo-

nus" is defined in Black's Law Dictionary 165 (5th ed 1979) as follows: "[a] consideration or premium paid in addition to what is strictly due".

On page 1 of the Nylic handbook, the introductory statement states, in pertinent part, "Although the agency contract of soliciting agents who are eligible to qualify for membership in Nylic provides for the payment of * * * commissions based on results produced, Nylic supplies an additional incentive or inducement for a persistent and sustained production by every eligible agent of new life insurance which will have a high degree of persistency from year to year".

Recently, in *Weiner v Diebold Group* (173 AD2d 166, 167), we stated "[t]he rule with respect to the payment of bonuses is well settled. 'An employee's entitlement to a bonus is governed by the terms of the employer's bonus plan.' *(Hall v United Parcel Serv.,* 76 NY2d 27, 36, citing *Bayer v Oxford Univ. Press,* 270 App Div 586, *affd* 296 NY 780.)"

■ Applying the legal authority, *supra,* we find that plaintiff's termination ended his eligibility to increase his Nylic benefits, since, in order to increase those benefits he had to, in accordance with the explicit provisions of the Nylic handbook, continue to be employed by defendant "under a soliciting agent's contract".

To put it another way, we find that the crucial event to the increasing of benefits, based on longevity, pursuant to the Nylic plan, was continued employment under the contract, and, as soon as plaintiff was terminated, the defendant was no longer obligated to increase those benefits, upon the basis of longevity in excess of 28 years *(Hall v United Parcel Serv.,* 76 NY2d 27, 36-37 [1990], *supra, mot to amend remittitur denied* 76 NY2d 846 [1990], *rearg denied* 76 NY2d 889 [1990]).

Plaintiff's cause of action for fraud is based, in substance, upon an allegation that, after the defendant knowingly deceived him into believing that he would be permitted to complete 30 years of employment, it improperly broke the employment contract, in order that defendant would not have to pay him maximum Nylic benefits. We reject that contention, since "[a] failure to perform promises of future acts is merely a breach of contract to be enforced by an action on the contract. A cause of action for fraud does not arise when the only fraud charged relates to a breach of contract" *(Tesoro Petroleum Corp. v Holborn Oil Co.,* 108 AD2d 607 [1st Dept 1985], *appeal dismissed* 65 NY2d 637 [1985]; *accord, Dalton v Union Bank,* 134 AD2d 174, 176 [1st Dept 1987]).

In the complaint, plaintiff asserts a cause of action for unjust enrichment, and a claim for quantum meruit. The doctrine of quantum meruit or quasi contract was developed by the law in order to make sure that a person who receives the benefit of services pays the reasonable value of such services to the person who performed them *(see, Bradkin v Leverton,* 26 NY2d 192, 196 [1970]). Further, we have stated that "[u]njust enrichment is a quasi contract claim" *(Feigen v Advance Capital Mgt. Corp.,* 150 AD2d 281, 283 [1st Dept 1989], *lv dismissed in part and denied in part* 74 NY2d 874 [1989]).

■ Since the plaintiff has fully performed under a written contract, whose existence is undisputed, and whose terms cover the subject matter of the dispute, we find that the plaintiff neither has a cause of action for unlawful enrichment nor a claim for quantum meruit *(see, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 389 [1987]).

It is well-established law that "to defeat a motion for summary judgment the opposing party must 'show facts sufficient to require a trial of any issue of fact' (CPLR 3212, subd [b])" *(Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]; *Mom's Bagels v Sig Greenebaum Inc.,* 164 AD2d 820, 823 [1st Dept 1990], *appeal dismissed* 77 NY2d 902 [1991]). We find no questions of fact herein which require a trial.

In conclusion, upon the basis of our analysis, *supra,* indicating that plaintiff has not set forth any cause of action, we find that the IAS court erred in not granting the defendant's motion for summary judgment.

We have considered the other contentions of the parties, and find them to be without merit.

Accordingly, order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered June 3, 1991, which denied the motion of the defendant for summary judgment, and denied the cross motion of the plaintiff for partial summary judgment as to liability, is unanimously reversed, insofar as appealed from, on the law and on the facts, motion of the defendant is granted, and the complaint dismissed, without costs.

SULLIVAN, J. P., WALLACH, KUPFERMAN and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 3, 1991, unanimously reversed, insofar as appealed from, on the law and on the facts, motion of the defendant for summary judgment is granted, and the complaint dismissed, without costs.