Kathryn M. LONGO, Plaintiff–Appellant,

v.

SHORE & REICH, LTD.; Advest, Inc., and Gerald I. Reich, Defendants–Appellees.

No. 1490, Docket 93–9202.

United States Court of Appeals, Second Circuit.

Argued April 6, 1994.

Decided May 24, 1994.

---

Herman M. Braude, Washington, DC (Levy & Tolman, New York City, Braude & Margulies, Washington, DC, on the brief), for plaintiff-appellant.

Joseph E. Gasperetti, New York City (Coleman & Rhine, on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, TIMBERS and WALKER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This case raises questions under New York law as to whether a plaintiff is entitled to recovery from her former employ-

er under her negotiated but unsigned employment agreement, or, in the alternative, on a theory of *quantum meruit*. Kathryn M. Longo appeals from the November 2, 1993, judgment of the District Court for the Southern District of New York (Charles S. Haight, Jr., Judge) granting defendants' summary judgment motion in this diversity action. The District Court found that the plaintiff was an at-will employee, that she could not recover severance pay under the terms of the unsigned contract, and that she could not recover under a theory of *quantum meruit* because she had received "the agreed salary" while she worked for the defendants. We conclude that there can be no recovery under the negotiated but unsigned document since the defendants evidenced their intent not to be bound by the instrument until it was signed by both parties; however, under New York law, in the absence of an express contract, the plaintiff is entitled to recover in *quantum meruit*. We therefore remand for a determination as to the reasonable value of the plaintiff's services rendered to the defendants.

### Facts

Prior to being employed by the defendants, plaintiff Longo owned and operated two businesses involved in pension and employee benefit administration and consulting. In April 1990, Longo provided management consulting services through her company Creative Pensions Systems, Inc., to defendant Shore & Reich ("S & R"), a wholly owned subsidiary of Advest, Inc. Longo charged S & R $150 per hour for her work. In May and early June, 1990, the defendants and plaintiff discussed the possibility of Longo working as S & R's Chief Operating Officer. Several draft employment contracts were negotiated and prepared in the first few weeks of June, and Longo began working at S & R on Monday, June 18, 1990, though no contract had yet been executed. On June 21, David Horowitz, Assistant General Counsel at Advest, sent Longo a letter along with two unsigned copies of an employment agreement. Horowitz's letter read:

Enclosed are two execution copies of your employment agreement. These reflect the changes we discussed by phone.

If the enclosed are satisfactory, please sign both and then pass them on to Gerry Reich for signature by Shore & Reich, Ltd.

For your convenience in reviewing the changes, I have enclosed a copy redlined to show all changes from the draft of June 18, 1990.

Welcome to Shore & Reich. I look forward to working with you in the future.

Longo signed the agreement and forwarded it to Gerald Reich, S & R's Chief Executive Officer. Reich never signed the agreement. S & R terminated Longo's employment on September 12, 1990; she had been paid a total of $43,061.65 for three months of work, based on an annual salary of $175,000 as stipulated in the unsigned agreement.

### Discussion

■ On an appeal from a summary judgment, we review the record *de novo* to determine whether any genuine issue of material fact remains and whether the substantive law has been correctly applied. *See, e.g., Piesco v. City of New York, Department of Personnel*, 933 F.2d 1149, 1154 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

Longo first argues that the extensive negotiations engaged in by the parties produced a binding oral agreement, even though the appellees did not sign the written agreement that resulted from those negotiations. On this basis, she asserts that she should have received 90 days' notice of termination and one year's severance pay of $175,000, as her unexecuted written contract provided.

The District Court properly applied New York law in rejecting this claim. In *Scheck v. Francis*, 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970), plaintiff George Scheck, who had been working for many years as the personal manager for the popular singer Connie Francis, was negotiating a new contract with Francis. His earlier employment agreement had expired a year before; hence, like Longo, Scheck was working for some time without any signed, written contract regarding the terms of his employment. After a "final negotiation session," Francis's attorney mailed Scheck four copies

of the new agreement, with a cover letter instructing the plaintiff to "sign all copies" and "have Connie sign all copies." *Id.* at 842, 311 N.Y.S.2d 841, 260 N.E.2d 493. As in the pending case, the plaintiff signed the copies promptly and forwarded them to the defendant, who never signed. *Id.*

The New York Court of Appeals found that the cover letter, which like the cover letter from Assistant General Counsel Horowitz in the pending case required both parties to sign, "evidence[d] the intention of the parties not to be bound until the agreements were signed.... It appears quite clear, from [the attorney's] letter alone, that the agreements were to take effect only after both parties had signed them." *Id.* at 843, 311 N.Y.S.2d 841, 260 N.E.2d 493; *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989) (" '[M]ore is needed than agreement on each detail [to create a binding obligation. There must be] overall agreement ... to enter into the binding contract.' "). Thus, the Court in *Scheck* held that the unsigned agreement was unenforceable, even though fully and finally negotiated by the parties.

■ Appellant concedes that under New York law, if the parties did not intend to become bound by the agreement until it was in writing and signed, then there was no contract until and unless that event occurred. *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir.1984); *Scheck*, 311 N.Y.S.2d at 843, 260 N.E.2d at 495; *Brown v. Salzberg*, 197 A.D. 235, 188 N.Y.S. 813, 815 (2d Dep't 1921). "This rule holds even if the parties have orally agreed upon all the terms of the proposed contract." *R.G. Group*, 751 F.2d at 74 (citing *Schwartz v. Greenberg*, 304 N.Y. 250, 107 N.E.2d 65 (1952)). Horowitz's letter indicating that both Longo's and Reich's signatures would be required evidenced an intent that the parties would not be bound to the terms of their negotiations until the agreement was signed. *See Scheck*, 311 N.Y.S.2d at 843, 260 N.E.2d at 495. Hence, without the signatures of both parties, there was neither a binding oral nor written contract in this case.

Nor can the facts that Longo began working at S & R and that S & R accepted her services override the expressed intention to be bound by the contract only upon signing by both parties. The employee in *Scheck* was working in the employ of the defendant for a year after the expiration of the prior contract, yet the Court of Appeals refused to overlook the requirement of a signed contract for continued employment. We therefore cannot do so here. The result, required by New York law, leaves an employee without the protection of a negotiated contract under circumstances where she may well believe that her employer, by accepting her services, has chosen to dispense with the need for signing the contract. Though an employee in Longo's circumstances will be understandably surprised to find out that she is working without a contract, she can protect herself, once she is put on notice of a signing requirement, by declining to start or to continue working until she receives a signed copy of her contract.

Longo argues in the alternative that if the unexecuted employment agreement with S & R was not binding, she is entitled to *quantum meruit* recovery for the reasonable value of the services and equipment she provided. The District Court relied on the salary provision of the unsigned agreement—the very instrument that it correctly concluded was unenforceable—in holding that the plaintiff was entitled only to the "agreed upon" salary and could not recover in *quantum meruit*. This conclusion was in conflict with New York law. In *Isaacs v. Incentive Systems, Inc.*, 52 A.D.2d 550, 382 N.Y.S.2d 69 (1st Dep't 1976), the Appellate Division held that where an express employment contract was barred by the statute of frauds, the "defendant was precluded from relying upon that express contract to measure plaintiff's recovery." *Id.*, 382 N.Y.S.2d at 70. Instead the plaintiff was entitled to recover "the reasonable value of services rendered" on a theory of quasi contract, or contract implied in law. *Id.; see also In re Montgomery's Estate*, 272 N.Y. 323, 327, 6 N.E.2d 40, 41 (1936) (where client voluntarily cancelled contract, discharged attorney could recover in *quantum meruit* without limitation to the contract price).

■ The District Court's conclusion that Longo was not entitled to *quantum meruit* recovery also rested in part on its finding that she was an "at-will employee." *See Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920–21 (1987) (employment relationship "presumed to be a hiring at will" in absence of agreement establishing a fixed duration of employment). Although an at-will employment contract is generally terminable by either party without cause, *see Zolotar v. New York Life Ins. Co.,* 172 A.D.2d 27, 30, 576 N.Y.S.2d 850, 852 (1st Dep't 1991); *Dicocco v. Capital Area Community Health Plan, Inc.,* 135 A.D.2d 308, 310, 525 N.Y.S.2d 417, 419 (3d Dep't 1988), the compensation due an at-will employee upon discharge does not depend on the "at-will" status. In the absence of a contract that had become effective, Longo is entitled to *quantum meruit* recovery even though she was an at-will employee. *See Waldman v. Englishtown Sportswear, Ltd.,* 92 A.D.2d 833, 836, 460 N.Y.S.2d 552, 556 (1st Dep't 1983) (dismissed at-will employee entitled to *quantum meruit* recovery for services rendered).

■ *Quantum meruit* is a doctrine of quasi contract. *See Zolotar,* 576 N.Y.S.2d at 854; *Bauman Associates, Inc. v. H & M International Transport, Inc.,* 171 A.D.2d 479, 483–84, 567 N.Y.S.2d 404, 408 (1st Dep't 1991). In order to recover in *quantum meruit,* New York law requires a claimant to establish " '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.' " *Bauman Associates,* 567 N.Y.S.2d at 408 (quoting *Moors v. Hall,* 143 A.D.2d 336, 337–38, 532 N.Y.S.2d 412, 414 (2d Dep't 1988)); *see also Paper Corporation of U.S. v. Schoeller Technical Papers,* 773 F.Supp. 632, 640–41 (S.D.N.Y.1991). Longo's three months of service as Chief Operating Officer at S & R, at the request and with the full assent of the defendant, and the ongoing negotiations regarding the terms of her employment indicate that she has satisfied the first three of these requirements. It remains for the factfinder to determine the reasonable value of her services, which may be more than, less than, or the same as the compensation that she has already received.[1]

The judgment is vacated, and the case remanded for further proceedings. No costs.

---

1. Longo asserts that she is entitled to compensation based on her prior $150 hourly rate charged to S & R when she was an independent consultant. However, full time employees rarely, if ever, garner the same hourly wage as independent consultants; the latter must be responsible for their own overhead costs and have no guarantee that the hours in their day will be filled by paying clients. Her hourly rate as a consultant may be probative of the value of her services, but, in view of the circumstances noted in the text, it is not determinative.