**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WORDS, INCORPORATED,
Plaintiff-Appellant,

v.                                                                              No. 99-1182

XEROX CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-98-1305-A)

Argued: December 1, 1999

Decided: March 2, 2000

Before MOTZ and TRAXLER, Circuit Judges, and
Cynthia H. HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen M. Colangelo, MCGUIRE, WOODS, BATTLE
& BOOTHE, L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:**
Norman H. Singer, NORMAN H. SINGER, P.C., Washington, D.C.,
for Appellant. Robert T. Cahill, MCGUIRE, WOODS, BATTLE &
BOOTHE, L.L.P., McLean, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Words, Inc. ("Words") appeals the district court's ruling granting several motions to dismiss in favor of Xerox Corp. ("Xerox"). Words had filed suit against Xerox alleging breach of contract, intentional and negligent misrepresentation and intentional interference with prospective economic advantage. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

The facts are known to the parties and we need not recite them here. In short, Words argues that through its communications and dealings with Xerox, the two parties entered into a binding contract. Words refers in particular to Xerox's mailing to Words of a proposed agreement (the "Proposed Agreement"), that required both parties' signatures, which Words signed but Xerox did not. This presumed contract and its breach are the sole factual bases for all of Words' causes of action against Xerox.

I.

Words argues that it properly stated a claim against Xerox for Xerox's alleged breaches of the Proposed Agreement. The issue is whether the unsigned Proposed Agreement can lapse into an operative contract through means other than Xerox's required signature.

New York law governs any contractual dispute between the two parties. Under certain circumstances it is not necessary that both parties sign an agreement to make an enforceable contract. See Newburger v. Am. Surety Co., 242 N.Y. 134, 151 (1926). If the party against whom the contract is being enforced has indicated through some unequivocal act or through performance that it intends to adopt the contract, then a signature by that party is not required for the contract to be binding. See Allen v. National Video, Inc., 610 F.Supp.

2

612, 631 (S.D.N.Y. 1985). However, when parties submit to each other an agreement with the intention that the agreement be signed by both parties, the agreement is not binding until such signatures are made. See Scheck v. Francis, 260 N.E. 2d 493, 495 (N.Y. 1970). Similarly, if prior correspondence between the parties establishes that all parties' signatures are required on the contract, the contract will not exist until the signatures appear on the document at issue. See Longo v. Shore & Reich, Ltd., 25 F.3d 94, 97 (2d Cir. 1994).

In a September 1997 letter, Xerox explicitly informed Words that to continue their business relationship, Words and Xerox had to enter into a new agreement. Xerox mentioned in this letter that "a [Xerox] manager [would] contact [Words] . . . to discuss the specific contents of the new contract and the signing process for 1997." The Proposed Agreement contained two signature boxes at the end of the document, one of which Xerox never signed. Furthermore, various terms of the agreement, such as the Reserved Account specifications, were never finalized by the parties notwithstanding the fact that Xerox's correspondence stated that the specific contents would have to be discussed.

The dealings between the parties establish that Xerox did not intend for the Proposed Agreement to become binding considering all the holes that still remained to be filled. Under similar circumstances, courts have found that correspondence of a lesser degree between the parties, was sufficient to put the parties on notice that no binding agreement would be effectuated until the formal process was adhered to. See e.g. Scheck, 26 N.E. 2d at 495 (transmittal letter showed intent not to be bound until contract signed); Longo , 25 F.3d at 96 (same).

Xerox indicated a requirement of both parties' signatures on the Proposed Agreement for this to take binding effect. Its letter stating the necessity to discuss the signing process with Words along with the dual signing boxes on the Proposed Agreement itself indicate this. Barely one month after Words' signature Xerox terminated its relationship with Words. The one month gap is a lesser period than the year that elapsed in Scheck, and the three months that elapsed in Longo, which still constituted insufficient performance to rebut the presumption established by the letters of intent not to be bound until the signing process was fully complete.

3

Words relies on Allen to contend that Xerox's supposed part performance of the Proposed Agreement brought the contract into being. Allen is inapposite because, unlike the facts of this case, the parties in that case had fully performed their proposed agreement. Therefore, the outcomes of Scheck and Longo compel the conclusion that the 1997 agreement never came into being.*

II.

Words claims that Xerox breached its 1996 Agreement with Words. This claim consists in its entirety of an allegation that Xerox sold products in the markets that were covered by Words.

The 1996 Agreement explicitly allows Xerox to "market products in the Territory directly or indirectly without restriction." Words says that even if the 1996 Agreement allows Xerox to sell to other customers, Xerox still owes Words commission payments, and service and supply commissions, for sales made by Xerox within Words' territory. The 1996 Agreement makes no mention of any type of commission Xerox would owe Words for any sale made by Xerox within Words' territory. Words is unable to point to any such provision. Therefore Xerox was operating regularly under the terms of the 1996 Agreement and committed no breach of that contract.

III.

Words contends that its fraud-based claims are governed by Virginia law. Virginia law states that causes of action sounding in tort will be covered under the law of the place where the tort took place. See Milton v. IIT Research Institute, 138 F.3d 519, 521 (4th Cir. 1998). However, when the alleged torts are not distinct from any pre-existing contract between the parties, any choice of law provisions within the contracts shall determine the applicable law. See Paul Business Sys., Inc. v. Cannon U.S.A., Inc., 397 S.E.2d 804, 807-08 (Va. 1990).

_____

*In light of this conclusion we do not reach Xerox's argument that the Virginia statute of frauds prevents the Proposed Agreement from becoming binding on Xerox.

4

All Words' allegations against Xerox are premised on the contractual relationship between the two parties. Words' claim that any misrepresentations regarding the Proposed Agreement cannot arise from a contractual relationship because no agreement was finalized is incorrect in light of the fact that this was a renewal of a long-existing business venture. Therefore, the choice of law provisions within the contracts between the two parties govern which law applies in this instance. All relevant documents between the two parties delegate the resolution of any dispute "related to" the contract to the law of New York state and thus, New York law governs Words' fraud-based claims.

IV.

Words contends that it has properly asserted its fraud-based claims. When the fraud claim is a failure to perform a future act tied to a contract, then that claim will sound in contract and not in tort. See Tesoro Petroleum Corp. v. Holborn Oil Co., Ltd., 484 N.Y.S.2d 834, 835 (N.Y. App. Div. 1985). However, if the fraud-based claim finds its root in a common law duty of care then the claim is properly asserted as a fraud action. See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996). A plaintiff is prohibited from transforming a contract claim into a fraud claim by simply alleging that the other party failed to live up to its end of the bargain. See Sudul v. Computer Outsourcing Services, 868 F. Supp. 59, 62 (S.D.N.Y. 1994).

Words' allegations, though very detailed, do not arise independently of the contracts that the parties had with each other. Nor does Words allege an independent tort founded on a separate duty of care. The foundation for all of the fraud-based causes of action is the contractual relationship and when this relationship is removed, the tort causes of action collapse.

AFFIRMED

5