18-2956(L)
*Brook v. Simon & Partners LLP*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand nineteen.

PRESENT:
> DENNIS JACOBS,
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges.*

_____

BRIAN C. BROOK, MATTHEW J. PEED,

> *Plaintiffs-Appellants,*

> v.                                             Nos. 18-2956(L), 18-3840 (Con)

SIMON & PARTNERS LLP, BRADLEY D. SIMON,

> *Defendants-Appellees.*

_____

FOR APPELLANTS:                    BRIAN C. BROOK, Brook & Associates, PLLC, New York, N.Y., appearing both pro se and on behalf of Matthew J. Peed.

FOR APPELLEES:                     KENNETH C. MURPHY (Cheryl F. Korman, J'Naia L. Boyd, *on the brief*), Rivkin Radler LLP, Uniondale, N.Y.

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 16, 2018, is **VACATED** and the cause **REMANDED** for further proceedings consistent with this order. Because we vacate the judgment entered in No. 18-2956, Plaintiffs' appeal in No. 18-3840, of the District Court's order denying their motion to set aside the judgment, is **DISMISSED** as moot.

Plaintiffs-Appellants Brian C. Brook and Matthew J. Peed, attorneys, appeal from the District Court's dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) of their quasi-contract claims, and its denial of their motion under Rule 60(b) to set aside that judgment.

Brook alleges primarily that he is entitled to receive from Defendants certain bonuses and origination credits in connection with legal work performed on behalf of the former CEO of Duane Reade Drugstores, Anthony J. Cuti (the "Cuti Matter"). Brook brought this legal engagement to his former employer, Defendant-Appellee Simon & Partners LLP (the "Firm"). Brook asserts that he and the Firm's principal, Bradley D. Simon, also a Defendant-Appellee, never reached an agreement as to how much Brook would be compensated in connection with his employment and his transfer of the Cuti Matter to the Firm. Brook seeks to recover primarily on a theory of quasi-contract (asserting claims denoted as in *quantum meruit* and unjust enrichment). The District Court dismissed his claims, ruling as a matter of law that the Complaint's allegations established that Brook and the Firm entered into an enforceable oral contract under which Brook was paid a fixed annual salary and his bonuses and origination credits were left to Simon's discretion, thus precluding any recovery in quasi-contract.

Peed is a former contract attorney hired by the Firm at Brook's instance to work on the Cuti Matter. He alleges that Simon agreed to raise his hourly compensation from $125 per hour to an amount more in line with his billing rate at the Firm of $450 per hour, and

that the raise would occur if and when it became clear that Duane Reade would pay the Firm for his services at that rate. Simon (assertedly) failed to timely inform Peed that Duane Reade was in fact paying the related bills at that higher rate, and then reneged on his promise to raise Peed's hourly compensation. Like Brook, Peed seeks to recover on a quasi-contract theory. The District Court rejected his claims as well, reasoning in part that Peed had a contract, and in part that he failed to allege the fair value of his services to support any recovery.

Granting Defendants' motion to dismiss, the District Court directed the Clerk of Court to close the case without giving Plaintiffs an opportunity to seek leave to amend. Judgment issued two days later. Plaintiffs thereafter unsuccessfully sought reconsideration. Their subsequent motions to set aside the judgment under Rule 60(b) and for leave to file a First Amended Complaint ("FAC") were also denied. Plaintiffs now appeal.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to vacate the District Court's judgment.

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). As we have explained, "[W]here a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). We ordinarily review a district court's denial of leave to amend the pleadings for abuse of discretion. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). Leave to amend need not be granted, however, where the proposed amendments would be futile in that they could not cure the complaint's deficiencies. *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014). Where the district court's denial of leave to amend "is based on a legal interpretation, such as futility," we review the district court's ruling *de novo*. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015).

We conclude that the District Court exceeded the proper bounds of its discretion by directing that the case be closed and judgment issue without giving Brook and Peed an

3

effective opportunity to amend.  They had contingently requested leave to amend in their brief opposing the motion to dismiss, and repeated that request at oral argument before the District Court.  Yet, the District Court directed the Clerk to close the case without either addressing Plaintiffs' request or determining that amendment would be futile.

A review of the original Complaint ("Complaint") and the pleading deficiencies identified by the District Court, as well as the statements by Plaintiffs' counsel made at oral argument in opposing the motion to dismiss, suggest that amendment may not be futile.[1]  In particular,

1. <u>Peed</u>. The District Court assumed (as alleged) that Peed's contract with the Firm at the $125 per hour rate automatically terminated in December 2011 when Duane Reade paid for Peed's time at the full rate of $450 per hour.  If proven, such allegations could give rise to a quasi-contract claim under New York law for the services rendered after termination.  *See, e.g.*, *Gray v. Lurie*, 162 N.Y.S.2d 278, 280 (N.Y. App. Div. 3d Dep't 1957) (*quantum meruit* claim existed where employment contract was terminated and new contract was too indefinite to be enforceable).  However, the District Court dismissed Peed's quasi-contract-type claims, ruling that the Complaint's allegations were insufficient to establish the reasonable value of his services.  In this regard, the Complaint alleged that Peed's billing rate was $450 per hour, as charged by the Firm to Duane Reade.  An allegation that a stranger to this litigation has paid $450 per hour for Peed's time is at least "probative" of the reasonable value of Peed's services, even if Peed would not receive the full amount of the revenue as a contract attorney of the Firm.  *See Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 n.1 (2d Cir.

---

[1] Although Plaintiffs subsequently submitted a proposed FAC to the District Court seeking to address the pleading defects identified in the District Court's decision dismissing the Complaint, the proposed FAC was not submitted until Plaintiffs filed their Rule 60(b) motion.  Therefore, we do not consider the substance of the allegations in the proposed FAC in concluding that the District Court erred in failing to give Plaintiffs an opportunity to amend in connection with the dismissal of the Complaint. *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("In dismissing the amended complaint, however, the district court did not mention [plaintiff's] offer to amend and gave no reason for denying it. Since [plaintiff] had not previously been given leave to amend, and had offered to amend his complaint, we hold that the court abused its discretion in dismissing the complaint without leave to amend.").

1994) (concluding that, while plaintiff's hourly rate as a consultant did not determine the fair value of her services as an employee, that rate nonetheless "may be probative"). Moreover, even assuming *arguendo* that this allegation was insufficient to state a plausible claim for recovery in quasi-contract, Plaintiffs could remedy this deficiency by adding substantial allegations regarding the basis for the reasonable value of Peed's services.

In granting the motion to dismiss and denying Peed's motion for reconsideration, the District Court reasoned that an unenforceable "agreement to agree" could not have given Peed "any reasonable expectation that he would receive compensation at a certain rate or a certain percentage of the fees paid, because it would not have been possible to predict the outcome of such negotiations." *Brook v. Simon*, No. 17 Civ. 6435, 2018 WL 4360778, at *2 (S.D.N.Y. Sept. 4, 2018) (citing *Brook v. Simon*, No. 17 Civ. 6435, 2018 WL 2383142, at *7 (S.D.N.Y. May 14, 2018)). However, the quasi-contract theory of recovery exists precisely to address unjust enrichment occurring in the absence of a binding agreement between the parties. *See, e.g.*, *Bradkin v. Leverton*, 257 N.E.2d 643, 645 (N.Y. 1970) ("A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all."). Therefore, the inability to predict the outcome of negotiations as to a billing rate for compensation purposes does not preclude a plaintiff in a quasi-contract claim from proving the reasonableness of a particular rate through other sources of evidence. Thus, having dismissed Peed's claims for failure to allege specifics as to the basis for the reasonable value of his services (a ground that was not specifically argued by Defendants in their motion to dismiss), the District Court should have given Peed an opportunity to correct any pleading deficiency on that element in an amended complaint.

2. Brook. In dismissing Brook's quasi-contract-type claims, the District Court concluded from the Complaint's allegations that the parties had entered into an enforceable oral contract that covered those claims in toto, therefore foreclosing their separate assertion under New York law. *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery [in quasi-contract] if the parties have a valid, enforceable contract that governs the same subject

matter as the [quasi-contract] claim."). The District Court drew from the Complaint that Brook agreed to be employed by the Firm as an associate; in exchange, he was to be paid an annual salary of $150,000, as well as bonuses that were to include an unspecified share of the revenue derived from the Cuti Matter, with the bonus amounts to be determined by the Firm in Simon's discretion. Because the terms of the oral contract governed those bonuses, the District Court reasoned, Brook was barred from recovering in quasi-contract.

It is well settled that an "at-will" employee who is unhappy with the discretionary bonus ultimately awarded to him by an employer does not have a plausible breach of contract or quasi-contract claim under New York law. *See, e.g.*, *Newmark & Co. Real Estate, Inc. v. Frischer*, 41 N.Y.S. 3d 694, 695 (N.Y. App. Div. 1st Dep't 2016) ("The quasi-contractual counterclaims based on the alleged agreement are likewise precluded by the discretionary bonus policy."); *Kaplan v. Capital Co. of Amer. LLC*, 747 N.Y.S.2d 504, 505-06 (N.Y. App. Div. 1st Dep't 2002) ("Given the clearly expressed policy of the company that bonuses were to be paid solely at the company's discretion, and the provision requiring a writing executed by specified persons on the company's behalf to alter the terms of the employment relationship, plaintiff has no sustainable claim that defendant company entered into an enforceable agreement entitling him to bonus compensation.").

Here, however, Brook is attempting to allege something different – specifically, that he had an agreement with Simon that his salary would include a non-discretionary bonus and origination credit for the Cuti Matter in a mutually-agreed upon fixed percentage to be determined at a future time, but that such agreement was never reached. If properly pled, such allegations regarding a non-discretionary, fixed bonus, could state a plausible quasi-contract claim because there was only an "agreement to agree" on a material term. *See, e.g.*, *Mirchel v. RMJ Sec. Corp.*, 613 N.Y.S.2d 876, 878-79(N.Y. App. Div. 1st Dep't 1994) (reversing dismissal of quasi-contract claim where plaintiff claimed that bonus was not discretionary, but rather was part of non-forfeitable earned wages). Such a quasi-contract claim can be raised even by an at-will employee. *See Longo*, 25 F.3d at 98 ("In the absence of a contract that had become effective, [plaintiff] is entitled to *quantum meruit* recovery even though she was an at-will employee.").

Although the Complaint did not use the word "non-discretionary" when referring to the bonus and origination credit for the Cuti Matter, it can be inferred from various paragraphs in the Complaint that Brook was attempting to assert that those portions of his compensation relating to the Cuti Matter (as compared to the discretionary bonus that all associates received for general firm business) were non-discretionary and were to be fixed by Brook and the Firm as part of the agreement once it was determined how much Duane Reade would pay on the Cuti Matter. *See* Compl. ¶ 26 ("Simon also promised that, in addition to a salary and potential bonuses, Brook would receive origination credit for bringing in the Executive Matter. Simon agreed that this credit entitled Brook to a percentage of other lawyers' Executive Matter billings; he stated that he did not want to fix the percentage at that time because he needed more information about the matter to determine a fair percentage."); ¶ 34 ("Brook told Simon . . . that the amount of his origination credit should be set at the outset and in writing. Simon responded that he did not think it was in either party's interest to determine the amount of the origination credit at the time, given the uncertainties about the Executive Matter, including the potential difficulties in receiving full and prompt payment from the Employer."); ¶ 124 ("No contract was formed between Brook and Defendants. As alleged in detail above, there was no meeting of the minds between the parties regarding Brook's compensation for services rendered while associated with Simon & Partners. At best, there was an invalid 'agreement to agree,' or an agreement too indefinite on an essential term to be enforceable.").

To the extent that there was a lack of clarity on this issue in the Complaint, Brook's counsel made clear during the oral argument on the motion to dismiss that he was attempting to plead that there was an agreement to fix, mutually, this non-discretionary portion of his salary on the Cuti Matter in the form of a bonus and origination credit, but that Brook and Simon never fixed this material term. *See* A-96 ("[S]o the bonus issue here is not a discretionary bonus. Nowhere in the complaint it is [sic] alleged it was discretionary. That is defendant's recharacterization of the bonus."); A-112 ("The Court: . . . 'Is it your position, legal position, that a salary of $150,000 plus a discretionary bonus is not a contract?' [Plaintiffs' Counsel]: 'Your Honor, our argument is that that is not what

7

happened in this case. We don't allege that there was a discretionary bonus [on the Cuti Matter].'"); A-132 ("[T]hey discuss discretionary bonus in relation to other firm matters. Their discussion at the time, when Brook said I'll come and join your firm, was I am going to get a large percentage of these, you know, of what I am bringing in here. I am going to be compensated fairly for bringing in this giant matter. That was not intended to be discretionary. Mr. Brook never intended for that to be discretionary and that is nowhere alleged in the complaint."). Moreover, at oral argument in the District Court, Plaintiffs' counsel reiterated that he wanted an opportunity to clarify these allegations in the Complaint. A-130 ("Your Honor, the way that you're characterizing it here may be because the allegations in the complaint are confusing, and if that is the case, defendants have not asked for dismissal with prejudice, so we could ask for the opportunity to amend to clarify this.").

Based upon the allegations in the Complaint and the statements by Brook's counsel at the oral argument on the motion to dismiss, Brook may be able to plead that the total amount of his compensation was sufficiently material that its indeterminacy negated the existence of a contract. *See, e.g.*, *Joseph Martin, Jr., Delicatessen Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981) ("[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."). As noted, we see these as clarifications, not allegations factually contrary to the Complaint's assertions. Thus, additional allegations may support Brook's entitlement to recover under a quasi-contract theory.

In granting the motion to dismiss, the District Court reasoned that "even if the amounts of the bonuses and origination credit were material terms that were left open for future agreement, that fact would not preclude the formation of a valid agreement." *Brook*, 2018 WL 2383142, at *6 (citing *Tractebel Energy Mktg, Inc. v. AEP Power Mktg, Inc.*, 487 F.3d 89, 96-97 (2d Cir. 2007)). However, in *Tractebel*, there was a fully-executed, written agreement with explicit language that gave "every indication that the parties intended it to be binding." 487 F.3d at 95. To the extent that the District Court relied upon the parties' partial performance to demonstrate the existence of an agreement, we have made clear that, although performance is one factor among several for a court to examine in determining

8

whether a contract existed under New York law, alone, it is not "decisive." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984). Rather, to determine whether the parties' conduct evinces a binding agreement, courts must consider "the totality of all acts of the parties, their relationship and their objectives." *Tractebel,* 487 F.3d at 97. Thus, the Complaint's allegations of partial performance do not render any potential amendment on the quasi-contract claim futile.

In sum, because it appears from our review of the record that both Brook and Peed may be able to state viable claims, they should be given an opportunity to file an amended complaint.

For these reasons, we **VACATE** the May 16, 2018 judgment of the District Court and **REMAND** the cause for further proceedings consistent with this Order. Plaintiffs' appeal of the District Court's order denying their motion to set aside the judgment is **DISMISSED** as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court